[File No. 7072]

JOSEPH A. WEBER, Appellant, v. UNITED HARDWARE
AND IMPLEMENT MUTUALS COMPANY, a Corpora-
tion, Respondent.

(31 NW2d 456)

582

Opinion filed February 20, 1948.   Rehearing denied March 18, 1948

*Day, Lundberg & Stokes,* for respondent.

*Murray & Murray,* for appellant.

GRIMSON, District Judge. The plaintiff was the owner in 1944 of a gas and oil service station located on Main Street in the City of Mandan. This consisted of three Wayne computing gasoline pumps placed parallel with the street in front of the service building and with flood lights at each end of the line of pumps connected with the lighting system of the building. He carried insurance with the defendant indemnifying him for loss and damage to that property by "vehicles running on land" in the amount of $450.00 on the building, $250.00 on the pumps and $300.00 on the contents.

On February 14th, 1944, an employee of the state highway department driving a truck of the department ran into the pumps causing extensive damage to them and to the lighting system.

The defendant insurance company was duly notified and claim filed. An investigator was sent out by the defendant. It developed, however, that the state highway department at the time of this damage carried an insurance policy with the Royal Indemnity Company of St. Paul, Minnesota, to indemnify it

for all damages it might sustain up to $5,000.00 caused by the negligence of employees of the state highway department while such employees were engaged within the scope of their employment.

The defendant notified the plaintiff to the effect that he should seek compensation from the insurer of the highway department and its employee. A suit was commenced against the employee but he could not be found. Negotiations were then had with representatives of the Royal Indemnity Company of St. Paul, which resulted in a settlement on February 28, 1945, for $375.00 and a complete release and discharge by the plaintiff of the employee of the North Dakota state highway department charged with responsibility for the damage to the plaintiff's property above described. This release was signed by the plaintiff and the $375.00 check of the Royal Indemnity Company turned over to his attorney. Plaintiff claims he made this settlement on the assurance of the defendant's agent that the defendant would pay its share of the loss. The defendant failed to do that.

Then this suit was commenced. The complaint alleges $800.00 damages to the above described property of the plaintiff, of which it is claimed defendant under the insurance policy would be liable for $250.00 for damages to the pumps and $75.00 for damages to the lighting fixtures of the building.

The defendant answers setting up that the specific coverage on the pumps was only $250.00 and that the settlement with the Royal Indemnity Insurance Company constituted full payment on behalf of the tort-feasor of plaintiff's claim for damages and that plaintiff is estopped from bringing this action by reason of double indemnity and that the defendant is discharged from further liability by reason of said payment.

The case was tried and submitted to a jury after motions for dismissal and for directed verdict had been denied. The jury brought in a verdict for the plaintiff in the sum of $300.00. Thereupon the defendant's attorneys made a motion for judgment notwithstanding the verdict. Judgment for the defendant

notwithstanding the verdict was ordered and entered. Plaintiff has appealed from that judgment.

This order of the court amounts to a delayed action directed verdict for the defendant. Ch 220, 1945 SL. The sole question before this court is whether or not the evidence warrants such action. Rokusek v. National Union F. Ins. Co. 50 ND 123, 195 NW 300; First Nat. Bank v. Burdick, 51 ND 508, 200 NW 44; First Secur. Bank v. Bagley Elevator Co. 61 ND 140, 237 NW 648.

There is no conflict in the evidence. The ownership of the property and the damages in the amount of $800.00 are not disputed. The insurance policy is admitted. The evidence warrants a verdict of $250.00 for damages to the pumps and $50.00 for damages to the lighting fixtures connected with the building. So the verdict is within the coverage of the policy. The settlement with the Royal Indemnity Company of St. Paul and the release of the tort-feasor are also admitted.

The damages of $800.00 being more than the combined payment of the Royal Insurance Company, $375.00 and the verdict of $300.00, there is no question of double indemnity.

That makes the real question for determination in this lawsuit whether or not defendant was discharged from further liability by reason of the payment.

Did the release of the tort-feasor deprive defendant of the valuable right of subrogation so as to constitute a complete defense to this action?

Subrogation as used in this connection is a substitution by which the insurer who has paid a loss under a policy succeeds to any rights the insured may have against any person who may be primarily responsible for the loss. This rule has its origin in the general principles of equity and the nature of the insurance contract. 8 Couch, Insurance 6587; Appleman, Insurance Law & Practice 517; Vance, Insurance 668; May, Insurance, 2d ed 683; 26 CJ 455; Pittsburgh, C. C. & St. L. R. Co. v. Home Ins. Co. 183 Ind 355, 108 NE 525, Ann Cas 1918A 828.

This principle applies even if there is no provision for it in the insurance contract. It is purely a matter of equity. The

purpose is to make him pay who is primarily responsible for a loss and in good conscience should bear the consequences thereof. Under this rule the insurer has the right to recover from the one primarily liable for the damage to recoup himself to the amount he has paid the insured under the insurance policy.

This is a right that will be liberally applied for the protection of those who are its beneficiaries but will not be allowed where it would work injury to the party against whom it is claimed or deprive him of legal or equitable rights. 8 Couch, Insurance 6589; 6 Appleman, Insurance Law & Practice 521.

The right of subrogation does not come into existence until the insurer has paid to the insured his liability under the insurance contract. But, if before such payment by the insurer, the insured makes settlement with the tort-feasor or the one primarily liable for the loss and releases him fully from all liability it is generally held that such release destroys the insurer's right to subrogation and is therefore a complete defense to an action on the policy. 8 Couch, Insurance 6610; Vance, Insurance 675; 26 CJ 459; 6 Appleman, Insurance Law & Practice 587; Auto Owners' Protective Exchange v. Edwards, 82 Ind App 558, 136 NE 577; Propeck v. Farmers' Mut. Ins. Asso. (Tex Civ App) 65 SW2d 390; Sims v. Mutual F. Ins. Co. 101 Wis 586, 77 NW 908; Harter v. American Eagle F. Ins. Co. (CCA 6th Ohio) 60 F2d 245.

It is however argued on behalf of the plaintiff that, granting such is the law, the defendant has waived it and is estopped from urging it as a defense. It is claimed that the defendant's letters to the plaintiff urging him to seek compensation from the insurer of the highway department and the tort-feasor together with plaintiff's conversation with defendant's agent constitute, if not a waiver, then an estoppel to assert such a defense.

The insurance company may waive any defense it may have to an action on an insurance policy. McDowell v. Fireman's Fund Ins. Co. 49 ND 176, 191 NW 350; Beauchamp v. Retail Merchants Asso. 38 ND 483, 165 NW 545; May, Insurance 751; Currie v. Continental Casualty Co. 147 Iowa 281, 126 NW 164, 140 Am St Rep 300; Hanover F. Ins. Co. v. Dallavo (CCA 6th Mich) 274

F 258; Gish v. Insurance Co. of N. A. 16 Okla 59, 87 P 869, 13 LRA NS 826; Fireman's Fund Ins. Co. v. Thomas, 49 Ga App 731, 176 SE 690; Firemen's Ins. Co. v. Georgia Power Co. 181 Ga 621, 183 SE 799.

The right of subrogation may be waived by insurer. 8 Couch, Insurance 6674. In Fire Asso. of Phila. v. Schellenger, 84 NJ Eq 464, 94 A 615, it is held: "The right of subrogation is a mere personal one, conferred solely for the benefit of individuals; and a right of this character may always be waived by the party in whom it resides."

An insurer may be estopped from asserting a defense. Union Mut. L. Ins. Co. v. Wilkinson, 13 Wall (US) 222, 20 L ed 617; Hight v. Maryland Ins. Co. 69 SD 320, 10 NW2d 285; Propeck v. Farmers' Mut. Ins. Asso. (Tex Civ App) 63 SW2d 227. That is also the principle laid down in May, Insurance 754. In Everett v. Metropolitan L. Ins. Co. 129 Neb 386, 261 NW 575, it is held that, "An insurance company may be estopped from denying liability where, by its course of dealing and the acts of its agent, it has induced the insured to pursue a course to his detriment." See also J. Frank & Co. v. New Amsterdam Casualty Co. 175 Cal 293, 165 P 927; Sourwine v. Supreme Lodge, K. of P. 12 Ind App 447, 40 NE 646, 54 Am St Rep 532; 16 Appleman, Insurance Law & Practice 623.

"It may be generally stated, however, that the insurer may, by waiver, express or implied, lose the right of making certain defenses of which it otherwise could be entitled to avail itself, and, as a party cannot take advantage of his own wrong, an insurer cannot complain of a hardship which it has imposed upon itself by its own wrongful act. In other words, an insurance company, like any other contracting party, may waive provisions placed in the policy solely for its own benefit, and may, by its conduct, be estopped from asserting defenses which might otherwise be available." 8 Couch, Insurance 6936.

The letters heretofore referred to were introduced in evidence on the trial by defendant on a statement of its counsel that, "The defendant therein stated his position to the plaintiff to the effect that he should seek compensation from the insurer

of the Highway Department and Clifford Holwegner" (the tort-feasor). Since the trial those letters have become lost through no fault of counsel and their contents do not further appear in the present record. Thereafter an action was commenced on behalf of the plaintiff against Holwegner.

The summons and complaint were given to the sheriff for service. Holwegner however could not be found in the State so the service upon him could not be obtained. Plaintiff again urged payment of his claim by the defendant and in reply received the second of above-mentioned letters. Negotiations were then had with Mr. Foster, the local agent of the Royal Indemnity Company, who had insured the highway department, for settlement without suit or litigation of plaintiff's claim against Holwegner. A settlement was reached and a release, Ex. A, in full of any claim against Holwegner on account of this damage was signed by the plaintiff. The plaintiff testified that before signing this release he had a conversation with H. G. Hansen, the Bismarck agent of the defendant, as follows:

"Q. (by Mr. Murray) I show you exhibit 'A' and ask you if you had a talk with Mr. Hansen, the agent of the defendant company, at Bismarck, before you signed that?

A. Yes.

Q. Was there anything he said which induced you to put your name on it?

. . .

A. Yes.

Q. What did Mr. Hansen say to you which prompted you to put your name on that release?

. . .

A. Well, he said if I got the money out of the other company they would pay theirs.

Q. That's what Hansen said?

A. Yes.

Q. Did he make any statement to you that you were to get what you could out of the other company?

A. Yes.

Q. And if you did that, what did he say his company would do?

A. Pay their share.

Q. And was that the reason you put your name on that release you now hold in your hand?

A. Yes.

Q. And did this defendant company ever pay anything on the policy?

A. No."

Later he testified:

"Q. (by Mr. Murray) Coming to this release he just now talked to you about, you said this forenoon that you had talked with Harry Hansen, the agent of the company, at Bismarck, before you went to Mr. Foster's office and signed this release. Is that right?

A. Yes.

Q. Now, I don't know whether I got that clear, you just tell us what Mr. Hansen said to you about going up to sign that release?

. . .

A. Hansen said their company has got the money ready anytime they have over there.

Q. I don't get that?

A. Hansen said to me that his company has got the money ready anytime that they make their payment, the other party.

Q. Who was the other party?

A. Foster Insurance Company would make a settlement.

Q. If the Foster company made settlement then they would pay?

A. Yes.

Q. He, Hansen's company?

A. Yes.

. . .

Q. Is that the reason you went up to Foster's office?

A. Yes.

Q. And relying on what Mr. Hansen had said you put your name on this exhibit 'A'?

A. That's right.

.    .    .

Q. Had anything Mr. Hansen said have anything to do with your putting your name on it?

A. I figured I would get the other money from there.

Q. Is that the reason you put your name on exhibit 'A'?

A. Yes."

The agent H. G. Hansen was not called to rebut this testimony nor was it assailed in any way. So it stands uncontroverted.

Here we have a situation where the defendant as insurer directed plaintiff, the insured, to try to recover from the tortfeasor. Instead of paying its direct liability under the policy, defendant urged the plaintiff to recover from the tort-feasor. That indicated a preference by the defendant for that course of action rather than reliance on its right of subrogation. Plaintiff endeavored to do as directed. The tort-feasor had left the State. The service of process could not be made on him. Plaintiff then urged his claim against defendant and was again advised to seek recovery from tort-feasor. Negotiations for the settlement of the unestablished and unliquidated claim against the tort-feasor were then had with the insurer of the tort-feasor. Before such a settlement was consummated plaintiff consulted with the agent of the defendant and was told in effect to get what he could out of the insurer, the Royal Indemnity Company, and that the defendant would pay "their share." It is true that no direct reference either in the statement regarding the letters or the testimony of the agent was made in regard to releasing the tort-feasor. It may be safely assumed, however, that no recovery from that source could have been made without the signing of such a release and that the defendant knew that such would be the case. May, Insurance 2d ed 764.

Section 26–0702 ND Rev Code 1943 provides that any person who solicits insurance, transmits applications for policies of insurance, makes any contract of insurance, collects any premiums for insurance, "shall be regarded as the agent of such corporation *to all intents and purposes* unless it can be shown

that he receives no compensation for such services." No such showing was made in this case.

H. G. Hansen was the agent of the defendant at Bismarck who wrote the policy sued upon. Plaintiff carried other insurance with defendant. Plaintiff dealt with Hansen not only with regard to the policies and premiums but also in connection with his claim for this loss. Plaintiff consulted with him about the recovery from the other insurance company and relied on what the agent said. The two letters heretofore mentioned gave him additional grounds for such reliance. He was dealing with the only representative of the defendant known to him and acting as he thought in accordance with the desires of the defendant as expressed in those letters. The agent, Mr. Hansen, in the assurance given to the plaintiff, was just carrying out the "intents and purposes" of the defendant in accordance with those letters. There was absolutely nothing to warn the plaintiff of any limitations to Hansen's authority in this matter. The defendant had given him ostensible if not actual authority for those statements. Bekken v. Equitable Life Assur. Soc. 70 ND 122, 293 NW 200; New York L. Ins. Co. v. Hansen, 71 ND 383, 2 NW2d 163; Lechler v. Montana L. Ins. Co. 48 ND 644, 186 NW 271, 23 ALR 1193; Pagni v. New York L. Ins. Co. 173 Wash 322, 23 P2d 6, 16, 93 ALR 1325; 29 Am Jur 117, Insurance; Wells v. Prudential Ins. Co. 239 Mich 92, 214 NW 308; Koivisto v. Bankers & M. F. Ins. Co. 148 Minn 255, 181 NW 580; Walsh v. Aetna L. Ins. Co. 30 Iowa 133, 6 Am Rep 664.

The plaintiff in this case had a right of action against the tort-feasor to the amount of his damage. When on the encouragement of the defendant plaintiff settled and released the tort-feasor on part payment of the damages he lost his right to the full amount of the damages from the tort-feasor. That was a legal and equitable right. In Swain v. Seamens, 9 Wall (US) 254, 19 L ed 554, it is held:

"Where a person tacitly encourages an act to be done, he cannot afterwards exercise his legal right in opposition to such consent, if his conduct or acts of encouragement induced the other party to change his position so that he will be pecuniarily

prejudiced by the assertion of such adverse claim." Tolerton & S. Co. v. Casperson, 7 SD 206, 63 NW 908.

The evidence is conclusive that the defendant waived the right of subrogation and is estopped from claiming the loss thereof as a defense in this action. By its own acts as well as those of its agent it led the plaintiff into an action which would be detrimental to him if such defense were now allowed.

The judgment of the district court is reversed and the case is remanded with directions that a judgment be ordered and entered on the verdict as returned by the jury.

CHRISTIANSON, Ch. J., and BURKE and NUESSLE, JJ., concur.

BURR and MORRIS, JJ., did not participate.

GRIMSON, District Judge. (On Petition for Rehearing.) In a petition for a rehearing it is claimed that waiver and estoppel were not pleaded, that the evidence supporting them was not admissible and that they were not considered or passed upon in the district court.

As stated in the original opinion the suit is brought for damages under an insurance policy. The answer contains no counterclaim but alleges as new matter by way of defense that defendant was exonerated and discharged from liability on the policy because of a settlement with and release in full of the tortfeasor which he claims bars further action by the plaintiff. To this answer no reply was made. However, § 28-0740 ND Rev Code 1943, provides: "But the allegation of new matter in the answer not relating to a counterclaim, . . . , is to be deemed controverted by the adverse party as upon a direct denial or avoidance, as the case may require." In the case of Moores v. Tomlinson, 33 ND 638, 157 NW 685, it is held:

"It was not necessary for plaintiffs to reply to the new matter in the answer, because, under the express provisions of our Code of Civil Procedure, such new matter was 'deemed controverted by the adverse party as upon a direct denial or avoidance, as the case may be.' Comp. Laws 1913, Secs 7467, 7477. See also Comp Laws 1913, Sec 7452. By virtue of these statutory pro-

594

visions the allegations of the answer were controverted 'as upon a direct denial or avoidance' by operation of law, 'and the plaintiff might prove in response thereto any fact by way of denial or of confession and avoidance.' Pomeroy, Code Remedies § 588; American Case & Register Co. v. Walton & D. Co. 22 ND 187, 133 NW 309; Erickson v. Elliott, 17 ND 389, 117 NW 361; Scott v. Northwestern Port Huron Co. 17 ND 91, 115 NW 192; Koester v. Northwestern Port Huron Co. 24 SD 546, 124 NW 740; McCarthy Bros. Co. v. Hanskutt, 29 SD 535, 137 NW 286, Ann Cas 1914D 889."

And in Beauchamp v. Retail Merchants Asso. 38 ND 483, 497, 165 NW 545, the court said:

"Defendant is in error when it asserts that it was incumbent upon the plaintiff to raise the question of waiver by way of reply. In this state 'a plaintiff is not required to reply to new matter in an answer not constituting a counterclaim, except by order of the court; but every allegation of new matter in the answer, not constituting a counterclaim, is deemed controverted by the plaintiff as upon a direct denial or avoidance by operation of law.' "

See also A. M. Wilson Co. v. Knowles, 52 ND 886, 891, 204 NW 663; Pfaffengut v. Export Ins. Co. 55 ND 112, 118, 212 NW 518.

A reply therefore was not necessary. Any matter in avoidance of the new matter could be raised on the trial.

As to the second ground alleged for a rehearing the record shows that the objections made to the testimony on waiver and estoppel were overruled and the evidence admitted. At the close of the case the defendant moved for a directed verdict which motion was denied. The court thus passed not only on the admissibility of the testimony but also that there was sufficient evidence to submit the case to the jury.

After the verdict the defendant made a motion for a judgment notwithstanding or in the alternative for a new trial. On the hearing of that motion however defendant withdrew the alternative motion for a new trial and elected to "stand en-

tirely upon its request for judgment non obstante." That action left for consideration only the motion for judgment notwithstanding the verdict.

The ruling on a motion for judgment notwithstanding the verdict may be reviewed separately, § 28–1511 ND Rev Code 1943. But a new trial will not be granted on such a motion (Nelson v. Grondahl, 12 ND 130, 96 NW 299; Bragg v. Chicago, M. & St. P. R. Co. 81 Minn 130, 83 NW 511), unless the alternative motion for a new trial has been coupled with the motion for judgment notwithstanding. Nelson v. Grondahl, 13 ND 363, 100 NW 1093; Nagaro v. Metropolitan Edison Co. 130 Pa Super 323, 197 A 550. In the instant case that alternative motion was specifically abandoned and withdrawn.

In the case of Ennis v. Retail Merchants Asso. Mut. F. Ins. Co. 33 ND 20, 36, 156 NW 234, it is held:

"two prerequisites are essential to justify a trial court in ordering judgment notwithstanding the verdict: (1) A motion for a directed verdict must have been made and denied; (2) the party who moved for a directed verdict must have been entitled to a directed verdict at the time of the motion. The motion for judgment notwithstanding the verdict in effect reviews only the court's ruling in denying the motion for a directed verdict."

This holding is affirmed in Olson v. Ottertail Power Co. 65 ND 46, 53, 256 NW 246, 95 ALR 418; Bormann v. Beckman, 73 ND 720, 19 NW2d 455.

The state of the case as shown by the record then leaves for review only the decision of the court in denying the motion for a directed verdict made at the close of plaintiff's case. The grounds of that motion were briefly that the release of the tortfeasor and his employer was a bar to subrogation and together with the payment of a part of the damages by the Royal Indemnity Company resulted in a complete release and discharge of the defendant from all liability under the policy and constituted a complete defense to this action. Only those grounds can be considered. A determination must be made whether upon the whole record as it then stood the defendant was en-

titled as a matter of law to a directed verdict. Aetna Indem. Co. v. Schroeder, 12 ND 110, 120, 95 NW 436; First State Bank v. Kelly, 30 ND 86, 152 NW 125, Ann Cas 1917D 1044; State ex rel. Brazerol v. Yellow Cab Co. 62 ND 733, 736, 245 NW 382. On such a motion other alleged errors in the trial of the case including the court's rulings on admission of evidence are not considered. 49 CJS 165; Farmer v. Alton Bldg. & L. Asso. 294 Ill App 206, 13 NE2d 652.

"Action of court in entering judgment non obstante veredicto on ground that evidence had been improperly received *held* reversible error, since record at close of trial including all evidence determined right to such judgment (12 PS §§ 681 et seq.)." Ozanich v. Metropolitan L. Ins. Co. 119 Pa Super 52, 180 A 67, 576.

The evidence on the waiver by and estoppel of the defendant offered in avoidance of the new matter set up in the answer was before the jury. That made an issue for their decision.

We have again carefully reviewed all the evidence and rulings pertinent to the motion for directed verdict and again come to the conclusion that the plaintiff was not entitled to directed verdict at the close of the trial, that therefore the granting of judgment notwithstanding the verdict was erroneous and that the original verdict should be reinstated as directed in the original opinion.

The petition for rehearing is denied.

CHRISTIANSON, Ch. J., and BURKE and NUESSLE, JJ., concur.