16319

POWERS v. CALVERT FIRE INS. CO. *ET AI.*
(57 S. E. (2d) 638)

310

*Messrs. George W. Keels and Royall & Wright,* of Florence, *for Appellant,*

312

*Messrs. Willcox, Hardee, Houck & Palmer,* of Florence, *for Respondent,*

February 16, 1950.

STUKES, Justice.

The defendant insurance company, appellant here, issued its policy of collision insurance dated June 16, 1947, covering respondent's Buick passenger car whereby it insured respondent against loss from collision or upset to the extent of the actual cash value of the car. Respondent paid the annual premium of $81.00. On the following November 22d there was a collision between the automobile and a truck of Southern Cotton Oil Company wherein the car was demolished and respondent received very serious personal injuries. He was taken to a hospital and two days later talked by telephone from there to a Mr. Phillips, through whom the insurance was purchased, reported the loss and asked for immediate adjustment so that he would have a car in which to work when he left the hospital. Mr. Phillips said that it would be taken care of and he gave respondent the telephone number of a Mr. McCaskill, an insurance adjuster, whom respondent promptly called but was unable to talk to him until that afternoon. Respondent testified that Mr. Phillips later told him that the car was completely destroyed and that "they would straighten it out right away." However, nothing was done despite numerous subsequent telephone calls of Mr. Phillips by respondent and equally numerous promises in response.

Because of its relation to one of the grounds of appeal which will be subsequently discussed the following portion of respondent's testimony in this connection, which was given without objection, is quoted:

"Q. Mr. Powers, what if anything, when you reported this matter or while you were first in the hospital did you say to Mr. Phillips in regard to another automobile? A. Well, I called Mr. Phillips and told him I was going to have to have a car, I was leaving the hospital on Saturday or Monday or Sunday and I would have to have a car when I got out to get around to the jobs, and he told me to go ahead and buy one and that whenever the insurance was settled, why by the time I got out of the hospital they would have it settled up, I could go ahead and be straightened out.

"Q. Did you or not, pursuant to that statement, undertake to and did you secure an automobile? A. Yes, sir.

"Q. What arrangement did you make in regard to the payment for that automobile which you purchased? A. Well, the Pee Dee Motor Company in Timmonsville brought me a 1946 Ford Coach, and I gave them a check for Seven Hundred Fifty ($750.00) Dollars to hold against the insurance adjustment on the Buick."

Meanwhile respondent employed counsel on the day of the accident and suit was promptly brought in his behalf against the Oil Company for damages for the personal injuries and the damages to the automobile. $25,000.00 was demanded in the original complaint but respondent suffered serious relapse, involving partial paralysis, at his home after the first dismissal from the hospital and had to return. The second period of hospitalization was for six or eight weeks and his complaint against the Oil Company was amended to seek damages in the amount of $75,000.00. When the case was reached for trial at the ensuing February term of court an agreement of compromise settlement for $20,000.00 was made and in return for subsequent payment of that sum respondent executed a full release of the Oil Company, its

truck and driver, of all claims and demands, including personal injuries and automobile damage.

Respondent's counsel testified that shortly after he was employed he casually saw Mr. McCaskill, the adjuster for appellant, and the latter inquired what counsel thought of the prospect of recovery in the suit and was told simply that counsel thought that respondent had an excellent case. On the day in late Fabruary (or early March, per the testimony of respondent's wife) when the settlement was agreed upon Mr. McCaskill telephoned the counsel, saying he understood that the case had been settled, which the counsel verified, and Mr. McCaskill said, "Well, I am closing my file on this collision claim of Powers (respondent), we are not going to pay him any money." The compromise with the Oil Company was consummated and the release dated March 6, 1948. The time of this inquiry by McCaskill is significant. It indicates that through him the insurer was following the litigation, which is further made plain by the fact that the able attorney who defended the action for the Oil Company also represents the insurer-appellant.

This action was commenced on March 12, 1948 for $3,000.00 actual and punitive damages for alleged fraudulent breach of the insurance policy and the actual cash value of the automobile was alleged to be $1,800.00, a total loss, reported to the insurance company, payment of which was refused for the fraudulent purpose of requiring respondent to seek damages at his expense from the Oil Company, knowing that he had to demand in his complaint recovery of all elements of damages including the loss of the car; that settlement of the suit was made because of respondent's disability and financial distress and that attorney's fees and other expenses were incurred, and also expenses for procuring other means of transportation to and from the hospital and in the carrying on of respondent's business, all within appellant's knowledge. The complaint contained other allegations which need not be considered for the purpose of disposition of the appeal.

The answer put in issue the material allegations of the complaint and affirmatively set up the following stipulations of the policy: "In the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights."

This defense contained a recital of the suit against the Oil Company which included damages to the car and resulted in the release by respondent which was made without appellant's consent and caused its loss of the right of subrogation, in violation of the policy, which, it was alleged, discharged appellant from all liability thereunder.

The facts which have been stated appear from the evidence adduced by respondent. Appellant offered no evidence and moved unsuccessfully for nonsuit and directed verdict in its favor. The jury returned verdict for $1,350.00 actual damages after which appellant's motion for new trial was refused. This appeal followed.

The action was brought and tried without objection upon the theory that it was not for enforcement of the contract of insurance but for damages for its breach. We hold with the lower court that appellant was bound to discharge with reasonable promptness its undoubted liability under the policy. The evidence was susceptible of the conclusion, implicit in the verdict, that appellant sought to take advantage of respondent's position which was occasioned by the law requiring that his claims for personal injuries and property damage be sued upon in one action or the omitted claim lost. *Holcombe v. Garland & Denwiddie, Inc.*, 162 S. C. 379, 160 S. E. 881. Omission of the claim for property damage would have as effectually barred it as the subsequent release, and without consideration. The remedy for the apparent dilemma lay in appellant's hands.

It could have paid the loss, as it was obligated under its policy, and preserved its right of subrogation. *Phillips v. Clifton Mfg. Co.,* 204 S. C. 496, 30 S. E. (2d) 146, 157 A. L. R. 1255.

The Insurance Code of this State requires in section 62, page 349 of the Acts of 1947, 45 Stat., that blank for proof of loss shall be furnished within twenty days after receipt by the insurer of notice of the loss, or shall be deemed waived. It is undisputed in this case that notice was given to appellant's agent two days after the accident, despite which appellant did nothing although repeated fruitless requests for adjustment of the loss were thereafter made. The facts indicate equal disregard by appellant of the following provision of the policy: "Payment for loss may not be required nor shall action lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy nor until thirty days after proof of loss is filed and the amount of loss is determined as provided in this policy."

An insurer will not be permitted to profit from such a course of conduct. It cannot sit down and hold its hands and purse and thereafter escape liability for fulfillment of its contract by reason of the insured's effort, after fair notice, to recoup his loss by litigation against a wrongdoer. Appellant asserts that its right of subrogation has been destroyed by the voluntary act of the insured, but the right did not survive the recited conduct of appellant which amounted at least to waiver. Subrogation arises upon payment and, in default of that, appellant relies upon the last sentence of the subrogation clause of the policy which is quoted *supra*: "The insured shall do nothing after loss to prejudice such rights." The simple answer is that the provision is not now available to appellant because of its conduct which amounted to a breach of the contract of insurance and resulted in waiver of the right of subrogation. Breach was found as a fact by the jury under apt and plain instructions by the court. In the brief appellant repeatedly

denies repudiation of its contract and refers to passive or negligent breach, but the latter was nonetheless prejudicial to respondent.

Subrogation is an equitable right and will be enforced or not according to the dictates of equity and good conscience. It arises independently of contract provision. 46 C. J. S., Insurance, p. 154, § 1209; 8 Couch on Insurance 6588; *Globe & Rutgers Fire Ins. Co. v. Foil,* 189 S. C. 91, 200 S. E. 97. It would be highly inequitable under the facts of this case to allow appellant to shield itself from liability upon its contract obligation by the ghost of a formerly available right of subrogation. Waiver is an established doctrine in such cases. The following is quoted from 8 Couch on Insurance 6674: "The insurer may, either expressly or by implication, waive any right to subrogation, and this either by contract or by conduct."

In the North Dakota case of *Weber v. United H. & I. Mutuals Co.,* N. D. 31 N. W. (2d) 456, plaintiff's filling station property was damaged by the negligent operation of a vehicle of the State Highway Department. He was insured against such damage by a policy of the defendant. The latter suggested to plaintiff to pursue his remedy against the tort-feasor, which was done by an action for damages. That was settled by the tort-feasor's insurer upon payment of $375 and plaintiff released the tort-feasor. He then sued his insurer for the balance of his damages and recovered verdict and judgment for $300. Similar defense was made as in the case before us but the court held, as we do here, that the insurer had waived its right of subrogation. In the opinion it was said that while the right of subrogation will be liberally enforced for the protection of those who are its beneficiaries, it will not be allowed where it would work injury to the party against whom it is claimed or deprive him of legal or equitable rights, for which there were cited as authority 8 Couch on Insurance 6589 and 6 Appleman on Insurance Law and Practice, § 4051, p. 517. Another

case which was decided upon the same principle is *Sun Ins. Office v. Hohenstein,* 128 Misc. 870, 220 N. Y. S. 386, 389. There the insurer paid the insured a less sum than the amount of the damages suffered in a collision and the insured recovered an additional amount in an action against the tort-feasor. The insurer then sued the insured for the amount formerly paid by it. The aggregate of the recoveries by the insured was less than his damages and judgment was refused, the court saying, "The insurer did nothing to aid or participate in the action against the tort-feasor, and he cannot now be heard to complain that he was deprived of a substantial right." Other worthwhile quotes from opinion are the following: "Inasmuch as the sum paid by the plaintiff (insurer) to the defendant (insured) plus the sum recovered from the tort-feasor, deducting from this sum the expenses in the recovery of the judgment against the tort-feasor, was less than the defendant's loss, the plaintiff is entitled to no return from the defendant. * * * The insurer by its own laches deprived itself of this right of subrogation, and it cannot now be heard to complain."

There are two recent Georgia cases in which the insurers were denied recoveries from the insureds by way of subrogation of amounts of settlements obtained from the tort-feasors, despite prior payments to the insureds under the policies, upon the grounds of waiver because of failure to assert such rights until after the settlements were consummated. Those cases are *Firemen's Fund Ins. Co. v. Thomas,* 49 Ga. App. 731, 176 S. E. 690, and *Firemen's Ins. Co. v. Georgia Power Co.,* 181 Ga. 621, 183 S. E. 799.

There was no error in the refusal of the motions for nonsuit and direction of verdict and the considerations pertinent thereto are also conclusive of the propriety of the court's charge to the jury. Punitive damages went out of the case by the verdict and respondent did not contend for actual damages in the full amount of the value of the car, established by the evidence to be $1,800.00. Deductible from that liability of the insurer under the terms of

the policy was the sum of $50.00. The verdict of $1,350.00 was therefore $400.00 less than the "face" of the policy and the latter amount appears to be a reasonable proportion of the $20,000.00 settlement which was allocable to the loss of the automobile, less proportionate expenses of litigation inclusive of attorneys' fees. The latter were properly deductible from any recovery from the Oil Company on account of the car. The rule is stated with citation of supporting authorities in 29 Am. Jur., 1007, Insurance, Sec. 1346, as follows: "The principle that an insurer which has paid a claim for property destroyed through the negligence of a third person may—in some circumstances, at least—be reimbursed out of the funds received by the insured in satisfaction of his claim against the third person, is very generally recognized. Most of the courts, however, in applying the rule for reimbursement of the insurer, limit the recovery against the insured to the amount by which the sum received by the latter from the wrongdoer, together with the insurance, exceeds the loss, and the expense incurred by the insured in realizing on the claim against the wrongdoer, at least, where the insured acted in good faith and the insurer did not participate or assist in the collection of that claim."

It was on this theory that the case was brought and tried. It was alleged in the complaint: "9. That the defendant, Calvert Fire Insurance Company, knew that plaintiff had employed counsel to represent him in his action against the owner of the truck, which collided with him and his automobile, and that a reasonable fee for their services in connection with the prosecution of said action was at least one-third of any amount, which they recovered by way of settlement, or otherwise; and any and all expenses, which the plaintiff has undergone in recovering any amount with respect to the automobile covered by the said policy of insurance, should be borne by the defendant, Calvert Fire Insurance Company."

The Court instructed the jury in part, as follows: "The next allegation is that defendant knew that plaintiff had

employed counsel to represent him in his action against the owner of the truck, which collided with him and his automobile, and that a reasonable fee for his services in connection with the prosecution of said action was at least one-third of any amount which they reclaimed by way of settlement or otherwise, and any expense which the plaintiff has undergone with respect to the automobile covered by the said policy of insurance should be borne by the defendant, Calvert Fire Insurance Co. That is an allegation that is denied also by the defendant, therefore the plaintiff must prove it by the greater weight of the evidence."

In the foregoing calculations interest on the unpaid insurance is not taken into account, which could properly have been a factor. *Cogsdill v. Metropolitan Life Ins. Co.,* 158 S. C. 371, 155 S. E. 747. Appellant has saved that item and, also, $400.00 of its principal liability under the policy. No opinion is intimated as to liability for additional punitive damages because the jury did not award such. And, as the figures show, respondent has not obtained a double recovery. He is only indemnified for his car loss.

Appellant assigns as reversible error the admission in evidence over objection of the testimony of respondent that he incurred expense to provide himself and his family with an automobile soon after the loss of the Buick. He bargained to purchase on credit a used Ford which served him and other members of his family on trips to and from the hospital (the home was in an outlying town) and for business trips by his employee to and from his office, and to transport workmen to his several jobs. Respondent was a construction contractor and then had in progress several contracts in various scattered locations. This arrangement for transportation was made after suggestion of it by Mr. Phillips in a conversation with respondent quoted hereinabove from the testimony. Without collection of his automobile insurance from appellant he was unable to pay for the Ford and after about six weeks turned it back to the seller whom he subsequently paid $200 as rent

or compensation for its use. This expense accrued in part during the period which appellant had under the law and under the insurance contract to adjust the loss, and in part subsequent to that time. This was taken care of by the court in the instructions to the jury, as follows: "You may also consider any other expenses which were incurred in providing means of transportation in the carrying on of his business, after the period provided in the contract, within which the defendant had under the contract to adjust the loss." Moreover, no harm to appellant is reflected in the amount of the verdict and no point is made of alleged excessiveness of it.

Complaint is also made on account of the admission of evidence of the gravity of respondent's bodily injuries and the large sums which he paid for medical and hospital expenses. These items were relevant to the task of the jury to fix the amount of respondent's settlement with the Oil Company which was properly applicable to the automobile damage. Concededly, that was a difficult factual question upon which the jury needed all competent available light, but it is important to remember that the difficult situation was contributed to by appellant's failure to comply with its contract. It is said in the brief, "In such a situation, no jury could determine whether he (respondent) had been fully compensated for the damages to his automobile or not." However, perplexity attending the determination of the question of amount of damages rarely, if ever, defeats a cause of action. In such cases courts ordinarily depend upon the wisdom and fairness of the good men and true who compose the jury and here they appear to have reached a just and reasonable verdict. 15 Am. Jur. 414 *et seq.,* Damages, sec. 23. *Hampton v. Supreme Lodge,* 161 S. C. 540, 159 S. E. 923, 925. From the opinion in the latter the following is quoted: " 'There are cases  *  *  *  in which the question of an intentional wrong is involved. In such cases the degree of proof necessary is much relaxed in favor of the injured party. Where the wrongdoer creates the situa-

tion that makes proof of the exact amount of damages difficult, he must realize that in such cases "juries are allowed to act upon probable and inferential as well as direct and positive proof." ' *Wood v. Pender-Doxey Grocery Co.,* 151 Va. 706, 144 S. E. 635, 638. See, also, *Chesapeake & Potomac Tel. Co. v. Carless,* 127 Va. 5, 102 S. E. 569, 23 A. L. R. 943."

The exceptions are overruled and the judgment affirmed.

BAKER, C. J., and FISHBURNE, TAYLOR and OXNER, JJ., concur.