84 So.2d 333

James **POOLE**

v.

**WILLIAM PENN FIRE INSURANCE COMPANY.**

**6 Div. 852.**

Supreme Court of Alabama.

Nov. 3, 1955.

Rehearing Denied Jan. 12, 1956.

Hare, Wynn & Newell and Sadler & Sadler, Birmingham, for appellant.

Winston B. McCall, Victor H. Smith and Pritchard, McCall & Jones, Birmingham, for appellee.

SIMPSON, Justice.

This case comes to us on pleadings from the Circuit Court, Tenth Judicial Circuit, Jefferson County, wherein the plaintiff (appellant) took a nonsuit upon the court's sustaining of the defendant's demurrer to plaintiff's replication number 7 (an answer to defendant's pleas 3 and 4 as amended).

The suit arose under a policy of insurance in which the defendant insured the plaintiff's ambulance against loss by fire to the extent of $3,000. The pleadings show that the vehicle was burned through the negligence of Drennen Motor Ensley, Inc., and that the plaintiff suffered a loss in excess of $6,000.

Defendant's pleas 3 and 4 in effect aver that the plaintiff ought not to recover because (1) the plaintiff has cut off the defendant's subrogation rights against the tortfeasor by executing the following release:

> "For and in consideration of the sum of Three Thousand and No/100 ($3,000.00) Dollars, the receipt whereof is hereby acknowledged, the undersigned James Poole, doing business as Poole Funeral Home, does hereby compromise and admit full satisfaction of any and all claims, demands, actions or rights of action arising out of or

based upon the alleged negligent or wrongful destruction by fire of a 1949 Eureka Cadillac Ambulance, Motor No. 493650380, by the Drennen Motor Ensley Co., of Birmingham, Alabama, on May 13, 1949, while the said ambulance was undergoing repair work in the custody of the Drennen Motor Ensley, Inc. For the consideration above expressed the said James Poole hereby forever releases, discharges and acquits Drennen Motor Ensley, Inc. from any and all claims, actions and rights of action based upon or arising out of said alleged negligent or wrongful destruction by fire of said ambulance. It is understood that said sum is paid by way of compromise and settlement of a disputed claim, the above named corporation expressly denying legal liability on its part.

"This settlement is not intended to discharge the William Penn Insurance Company from any claim which the said James Poole, doing business as Poole Funeral Home, has against it for insurance, but as a full settlement with, and discharge of, the Drennen Motor Ensley, Inc. only."

and (2) since the consideration for the release amounted to full coverage of the policy, this payment constituted a discharge of the defendant's liability.

In replication 7 the plaintiff answers that he made claim under his policy, but the claim was denied and remains unpaid; that his loss was in excess of $6,000; that subsequently to the claim denial he executed the above release in consideration of $3,000; that the defendant has waived any rights of subrogation which it may have under the terms of the policy; and that the defendant has waived any rights to claim the benefits of any payment made by the tortfeasor to the plaintiff.

The defendant interposed forty grounds of demurrer to this replication. The court sustained the demurrer. Plaintiff took a nonsuit and now appeals; his assignments of error properly bring up for review the ruling below sustaining the defendant's demurrer to plaintiff's replication 7, as an answer, separately and severally, to pleas 3 and 4 as amended.

From the judgment entry it is not specifically recited that appellant was forced to suffer a nonsuit because of adverse rulings of the trial court. However, upon comparison of the instant recital with that contained in the appeal record of the case of Ex parte Martin, 180 Ala. 620, 61 So. 905, we have concluded in favor of appellant and will proceed to review the stated ruling.

In undertaking such review, however, we are limited to consideration of only such rulings of the trial court as culminated in and superinduced the taking of the nonsuit. Calvert Fire Ins. Co. v. Maddox, Ala.App., 82 So.2d 277, 279, certiorari denied 263 Ala. 698, 82 So.2d 280.

The judgment entry recites a series of court rulings on December 6, 1954, in response to extensive pleadings. It shows that the plaintiff took a nonsuit following ruling on the demurrer to replication 7, although there is no specific mention that the nonsuit resulted from this ruling, viz.:

" * * * plaintiff by separate paper filed Replication No. 7, defendant refiles and reassigns all demurrers heretofore filed to said Replication No. 7; the demurrers to replication No. 7, as an answer to Pleas 2, 3, 4, separately and severally, are by the court heard and considered, whereupon,

"It is ordered and adjudged by the court that said demurrers be and they are hereby sustained; plaintiff withdraws Replication No. 1; plaintiff declines to plead further and takes a non-suit, and moves the court for an order accordingly, whereupon,

"It is ordered and adjudged by the court that a non-suit be and the same is hereby entered in accordance with plaintiff's motion, * * *."

"The recitals of the judgment as to the cause of the non-suit is conclusive, Garner v. Baker, 214 Ala. 385, 108 So. 38, and if the judgment entry does not specify

with particularity the ruling or rulings necessitating the non-suit, 'the court must for itself determine, within the recitals thereof (Long v. Holley, 157 Ala. 514, 47 So. 655), just what was the ruling or rulings which obstructed plaintiff's right " * * * to proceed in his effort for recovery." ' City of Mobile v. Board of Revenue and Road Commissioners of Mobile County, 219 Ala. 60, 121 So. 49, 51." Calvert Fire Ins. Co. case, supra.

■ The import of the holding in the City of Mobile case, supra, and approved in the Calvert Fire Ins. Co. case, supra, is that in the absence of a specific recital or showing in the judgment that the rulings prior to that on the demurrer to replication 7 were material inducements to the nonsuit we should not so hold, but should conclude that the action of the court in sustaining the demurrer to replication 7 was the ruling which obstructed the plaintiff's right to proceed in his effort for recovery and therefore it is the only ruling up for review. "If this were not true, on such appeal, we would open the way to a consideration of all the rulings prior to the nonsuit, contrary to the uniform decisions of this court." City of Mobile case, supra [219 Ala. 60, 121 So. 51].

In replication 7 the appellant avers waiver in that he made claim upon the appellee for loss incurred, but this claim was denied, whereupon he made a compromise settlement with tortfeasor Drennen and executed the release above quoted. Two questions arise: (1) As a matter of pleading in connection with the asserted demurrer, do the facts alleged support an acceptable conclusion of waiver? (2) As a matter of law, does the denial of the policy claim by the insurer constitute a waiver of the insurance company's rights of subrogation which the company claims under pleas 3 and 4. Both questions are due an affirmative answer, resulting that the judgment must be reversed.

### (1)

Replication 7 purports to answer pleas 3 and 4. In plea 3 the appellee sets out the following excerpt from the policy:

■

"In the event of payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights."

Taken together, the pleas and the replication show that under the policy subrogation rights accrue to the insurer *upon payment of a claim.* On October 13, 1950, the appellant filed a claim for payment; this claim was denied with no payment made. The replication concludes that by this affirmative denial the insurer waived his rights to subrogation.

■ In Corinth State Bank v. First National Bank of Florence, 217 Ala. 632, 117 So. 216, the rule was mentioned that an intentional relinquishment of a known right amounts to a waiver of subrogation rights.

It is clear from the pleadings that the insurer was aware that his rights to subrogation arose only upon payment of a claim: he quotes the appropriate portion of the contract in his own plea. His refusal to pay is the relinquishment alleged in the denial of the claim. " * * * There is no reason why a pleader should not draw his conclusion from the facts alleged— where the facts admit of different conclusions, it is necessary that the pleader conclude—provided he draws the correct conclusion * * *." Sauls v. Leath, 213 Ala. 664, 106 So. 133.

We are impressed that the conclusion of waiver is acceptable within the restrictions set out in the cases of Cassimus Bros. v. Scottish Union & Nat. Ins. Co., 135 Ala. 256, 33 So. 163, and Mountain Terrace Land Co. v. Brewer & Jones, 165 Ala. 242, 51 So. 559, inasmuch as the insurer's denial (nonpayment) is the active and necessary fact underlying the conclusion.

**66**

(2)

■ When by its own conduct an insurer places the insured at such a disadvantage that the insured must proceed against the tortfeasor in order to save himself—and does so—the insurer thereby waives his right to subrogation. Powers v. Calvert Fire Ins. Co., 216 S.C. 309, 57 S.E.2d 638, 16 A.L.R.2d 1261; Roberts v. Fireman's Ins. Co., 376 Pa. 99, 101 A.2d 747; Weber v. United Hardware & Implement Mutuals Co., 75 N.D. 581, 31 N.W.2d 456. To hold otherwise is to force the insured to bring suit initially against the insurer and thereby lose the true value of that contract for which he has paid his premium; i.e., a contract of indemnity, North River Ins. Co. v. McKenzie, 261 Ala. 353, 74 So.2d 599.

There is another principle immanent in the doctrine but which the pleading does not raise: Does nonparticipation by the insurer in suit brought by the insured against the tortfeasor amount to waiver? In this matter it would seem that the insurer's knowledge of the suit's pendency is material. Replication 7 is silent as to (1) pendency of a suit against the tortfeasor, (2) nonparticipation by the insurer and (3) the insurer's knowledge as to the suit's existence, although the replication admits compromise of the claim against the tortfeasor. The demurrer interposed does not raise these questions, so in this state of the pleading we must pretermit a ruling upon the effect of the insurer's nonparticipation in the suit against the tortfeasor. See Richards on Insurance, Vol. 3, § 430; Shawnee Fire Ins. Co. v. Cosgrove, 85 Kan. 296, 116 P. 819, 41 L.R.A.,N.S., 719; 29 Am.Jur. 1009, § 1348.

In conclusion, it seems proper to say that this phase of the doctrine of subrogation has not been very well or clearly developed in our jurisprudence. It is rather nebulous and indecisive and there is nothing to guide decision except an adumbrant line which in the cases seems to lead first in one direction and then in another. We think, however, after considerable study and research, that the foregoing observations are consonant with modern authority and the best considered cases on the subject.

■ It results that replication 7 was not subject to the demurrer interposed and the judgment must be reversed.

Reversed and remanded.

LIVINGSTON, C. J., and GOODWYN and MAYFIELD, JJ., concur.