**NATIONAL MUTUAL INSURANCE COMPANY, et al., Appellant (Defendant Below),**

v.

**Kenny FINCHER, Appellee (Plaintiff Below).**

No. 2–281A35.

Court of Appeals of Indiana, Fourth District.

Dec. 16, 1981.

William E. Beck II, Martin & Beck, Kokomo, for appellant.

Dan J. May, Kokomo, for appellee.

MILLER, Presiding Judge.

Appellee Kenny Fincher was injured when he was struck by a hit-and-run automobile; subsequently, he brought suit against his insurer, appellant National Mutual Insurance Company (Company), when it failed to pay his claim. Fincher received a judgment for his stipulated medical expenses, $467.44, plus costs, following a bench trial. On appeal, the Company raises

two issues: 1) whether the trial court erred in entering judgment against the Company because Fincher had extinguished his right of action under his policy when he executed a "complete release" against the alleged hit-and-run driver; and 2) whether the trial court erred in allowing Fincher to proceed under the uninsured motorist provision of the policy because the provision required arbitration. For the reasons stated below we affirm.

## FACTS

On June 13, 1979 Fincher was struck by a hit-and-run automobile as he stood in the yard at his girlfriend's home, resulting in knee and head injuries and a broken leg which required him to miss work and to use crutches for one month. At the time of the accident Fincher was covered by an insurance policy issued by the Company. The policy indemnified Fincher for medical expenses, within the policy limit,[1] incurred as the result of "being struck by an automobile." In addition to the medical expenses benefits, the policy also included some coverage for "loss of income for a period of continuous disability."[2] The policy also indemnified Fincher, within the policy limits, for "all sums which the insured [Fincher] ... shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury; ... an 'uninsured automobile' includes ... a hit-and-run automobile."

Fincher initially brought a negligence action, shortly after the accident, against Jeff McCoy in the Howard County Court, Small Claims Docket, and alleged McCoy was the

---

1. The "Medical Expense Benefit" provision of the policy specifically obligated the Company: "To pay all reasonable expenses incurred within one year from the date of accident for necessary medical, surgical, x-ray and dental services, including prosthetic devices and necessary ambulance, hospital and professional nursing services, subject to a limit of $5,000, each person."

2. The Company agreed in the "Loss of Income Benefit" provision:

"To pay eighty-five (85) percent of loss of income for a period of continuous total disability beginning the fifteenth day after the accident and terminating not later than one year and fourteen days from date of the accident or at death, whichever occurs first, not in excess of $750.00 per month with total payments for loss of income not in excess of a limit of $5,000, each person."

driver of the hit-and-run automobile. The complaint sought $1,500 in damages for Fincher's personal injuries. While the lawsuit was pending Fincher also (unsuccessfully) sought compensation from the Company for medical injuries and for wages which he lost as a result of the accident. Consequently, Fincher added the Company as a defendant, alleging the Company had breached the insurance contract by "maliciously" denying his claim, and seeking damages for medical expenses, lost wages, and pain and suffering.[3]

Some months later, while the matter was pending, counsel for Fincher informed the Company's counsel that Fincher had received a settlement offer from McCoy in the sum of $750, whereupon the Company's counsel sent the following letter, dated July 11, 1980, to Fincher's counsel with a copy to McCoy's counsel:

"This will acknowledge your letter of July 9, 1980. It is my recollection that your client's medical expenses are less than $500. Under our contract with your insured we have subrogation rights and should we ever pay any sums under our policy, we have subrogation rights to proceed to collect first and above your client. Therefore, *inasmuch as you have received an offer to settle* for $750 against a third

---

3. The medical expenses were ultimately stipulated as being $467.44 at the time of trial. In addition, Fincher testified, without contradiction, he lost $300 in wages.

4. The covenant-not-to sue reads in pertinent part:

"COVENANT
For the Sole Consideration of, Seven Hundred Fifty Dollars (750.00), the receipt and sufficiency whereof is hereby acknowledged the undersigned do hereby covenant and undertake with Jeffrey McCoy, his heirs, executors, administrators, agents and assigns, to forever refrain and desist from instituting or asserting against him any claim, demand, action or suit of whatever kind or nature, either directly or indirectly, for injuries or damage, to person or property, resulting or to result from an accident which occurred on or about the 13th day of June, 1979, at or near Howard County, Indiana.

party, *we would suggest that you go ahead and collect this* and waive your medical coverage. Should you settle with the third party, then you have jeopardized our subrogation rights and we would have to deny your claim. We are placing the third party on notice that they should do nothing in any settlement negotiations with you to jeopardize our subrogation rights.

*Under the circumstances my client, Celina Group must deny your claim since you can readily collect sums of money above the medical coverage.*" (Emphasis added.)

On July 31, 1980 Fincher executed a covenant-not-to sue in which Fincher, in exchange for $750, promised never to institute suit against McCoy with respect to the accident.[4] McCoy was not dismissed from the suit. However, the only appearances at trial were by Fincher and the Company.

As noted above, the trial court entered judgment in the amount of $467.44 plus costs for Fincher.

## DECISION

■ The Company contends Fincher foreclosed all his rights against the Compa-

It is understood that the said Jeffrey McCoy expressly denies any negligence on his part causing or contributing to said accident and any liability therefore, and that this agreement is entered into for the purpose of avoiding litigation and shall not be construed as an admission of liability on his part, and that [the] undersigned hereby expressly reserves the right to sue any other person or persons against whom he may have or assert any claim on account of damages arising out of the above described accident.
It is further expressly understood and agreed that as against undersigned, his heirs, executors, administrators and assigns, this instrument may be pleaded as a defense in bar or abatement of any action of any kind whatsoever, brought, instituted on account of said supposed claim or claims against Jeffrey McCoy."

ny when he covenanted not to sue [5] McCoy because such covenant destroyed the Company's subrogation rights against McCoy.[6] In support of its contention the Company cites *Hockelberg v. Farm Bureau Ins. Co.,* (1980) Ind.App., 407 N.E.2d 1160. The plaintiff in *Hockelberg* was injured in an automobile collision with a vehicle owned by a trucking company. The plaintiff brought a negligence action against the driver and the trucking company. She had the suit dismissed with prejudice after reaching a settlement with the defendants. Prior to the dismissal of the suit, the plaintiff made a claim against her insurance carrier for medical expenses incurred as a result of the accident. Her insurance carrier declined payment until she signed, in accordance with the policy, a medical subrogation receipt and trust agreement which would have assigned her right of recovery against the defendants to the carrier. The plaintiff refused to sign the subrogation agreement and after her suit was dismissed, she brought an action against her insurance carrier to recover under the policy. The trial court granted summary judgment in favor of the insurance carrier, and on appeal this Court held:

"Under the facts as developed in the present case it seems apparent that [the plaintiff] foreclosed [the insurance carrier's] right to subrogation by giving the tortfeasors a complete release of all claims and by dismissing her lawsuit with prejudice when such suit encompassed all claims. Having thus destroyed [the insurance carrier's] subrogation rights, [the plaintiff] cannot recover under the policy as a matter of law and the trial court was correct in so holding."

*Id.* at 1162. The Company maintains that the holding in *Hockelberg, supra,* is controlling in the present case. We disagree.

■ Generally, recovery by an insured from his insurer is barred when, before the insured settles with his insurer, the insured settles with, or releases the alleged tortfeasor. *Hockelberg v. Farm Bureau Ins. Co., supra; Auto Owners' Protective Exchange v. Edwards,* (1922) 82 Ind.App. 558, 136 N.E. 577; 44 Am.Jur.2d *Insurance* § 1839 at 767 (1969). The rationale for the rule is that the release or settlement with the tortfeasor deprives the insurer of its subrogation right granted by the policy, since the insurer only has whatever rights its insured has. A policy requirement that the insured shall do nothing after the loss to prejudice his right of subrogation is generally breached by the insured when he releases or settles with the wrongdoer, and as a result extinguishes his right of action on the policy. *Hockelberg v. Farm Bureau Ins. Co., supra; Hilley v. Blueridge Ins. Co.,* (1952) 235 N.C. 544, 70 S.E.2d 570.

■ However, it is also well settled that the doctrines of waiver and estoppel

---

5. The Company incorrectly refers to the agreement between Fincher and McCoy as a "release." Fincher and his assigns promised "to forever refrain ... from ... asserting any ... suit" against McCoy with respect to the accident. Furthermore, Fincher expressly reserved the "right to sue any other person ... on account of ... the ... accident." The agreement is a covenant-not-to sue since it is not an abandonment or relinquishment of a claim for damages, but an election not to proceed against a party. *Cooper v. Robert Hall Clothes, Inc.,* (1979) Ind., 390 N.E.2d 155.

Although not raised by the parties, we are aware of the rule that a complete release of a joint tortfeasor is a release of all the other joint tortfeasors. *Bellew v. Byers* (1979) Ind., 396 N.E.2d 335. A covenant-not-to sue however, is not within the ambit of the rule. *Cooper, supra.* The present case also falls outside the

joint tortfeasor rule because McCoy and the Company did not comprise an "entity" where the defendants acted in concert or dependently to produce injury. *Cooper, supra.*

6. The subrogation provision applicable to the medical expenses and lost wages stated:

"In the event of any payment under this insurance ... the company shall be subrogated to all the rights of recovery therefore [sic] which the injured person or anyone receiving such payment may have against any person or organization and such person shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights, ... [and the insured] shall do nothing after loss to prejudice such rights."

The uninsured motorist provision contained a similar subrogation clause.

extend to any ground upon which liability can be denied by an insurer. *Protective Ins. Co. v. Coca Cola Bottling Co.*, (1981) Ind.App., 423 N.E.2d 656; *West v. Indiana Ins. Co.*, (1970) 148 Ind.App. 176, 264 N.E.2d 335. A subrogation right may be waived. *Kozanjieff v. Petroff*, (1939) 215 Ind. 286, 294, 19 N.E.2d 563, 566.[7] Other jurisdictions have established an insurer may waive its right of subrogation or be estopped to assert it, if its conduct induces the insured to settle with the wrongdoer. The courts have held waiver or estoppel by the insurer in this regard may consist of a direct suggestion of settlement, an unreasonable delay in satisfying its obligation under the policy, or an arbitrary denial of a claim. *Russell Gasket Co. v. Phoenix of Hartford Ins. Co.*, (6th Cir. 1975) 512 F.2d 205; *Weber v. United Hardware & Implement Mutuals Co.*, (1948) 75 N.D. 581, 31 N.W.2d 456; *Powers v. Calvert Fire Ins. Co.*, (1950) 216 S.C. 309, 57 S.E.2d 638; *Runner v. Calvert Fire Ins. Co.*, (1953) 138 W.Va. 369, 76 S.E.2d 244; *Poole v. William Penn Fire Ins. Co.*, (1955) 264 Ala. 62, 84 So.2d 333; *Liberty Mutual Ins. Co. v. Flitman*, (1970) Fla. App., 234 So.2d 390; *McNeill v. District-Realty Title Ins. Corp.*, (1975) D.C., 342 A.2d 55; 44 Am.Jur.2d *Insurance*, § 1840 at 768 (1969); See *Havanich v. Safeco Ins. Co. of America*, (2nd Cir. 1977) 557 F.2d 948. Initially, the insurer in *Russell Gasket* arbitrarily denied the insured company's claim under a policy which covered losses arising from employee embezzlement. The insured brought an action against the employees, who offered to settle for an amount equal to the limits on the policy between the insured and the insurer. The insurer advised its insured to accept the offer and to settle with the wrongdoers. After refusing the settlement offer, the insured obtained a judgment against the employees whereupon the insured filed suit against the insurer.

The Court of Appeals held the conduct of the insurer in denying that the insured's losses were covered and in standing idly by while the insured pursued the wrongdoers, constituted, as a matter of law, an estoppel and waiver of the insurer's claim the insured had violated the insurer's subrogation rights. *Russell Gasket Co. v. Phoenix of Hartford Ins. Co., supra* at 209.

*Powers v. Calvert Fire Insurance Co., supra*, involved an automobile accident in which the insured suffered severe personal injuries and the total loss of his automobile. The insurer was "undoubted[ly] liable" to the insured for the loss of the automobile under a collision insurance policy. The insured promptly made a claim which was not paid by the insurer. Meanwhile the insured brought an action against the alleged tortfeasor in which the insured claimed damages for his personal injuries and the loss of his automobile. The suit was terminated by a settlement releasing the alleged tortfeasor in exchange for a sum which failed to make the insured whole. The insurer kept close contact with the progress of the suit and settlement, but took no part in either. The policy contained a standard subrogation clause which provided the "insured shall do nothing after loss to prejudice [the insurer's subrogation] rights." After the settlement with the tortfeasor the insured successfully brought an action against his insurer for breach of the policy. In affirming the judgment the Supreme Court of South Carolina concluded an insurer "cannot sit down and hold its hands and purse and thereafter escape liability for fulfillment of its contract by reason of the insured's effort, after fair notice, to recoup his loss by litigation against a wrongdoer." The court held the policy provision quoted above was unavailable to the insurer "because ... its conduct ... amounted to a breach of the contract of insurance and

---

**7.** *Kozanjieff v. Petroff, supra*, involved the waiver of an "equitable" subrogation right. We note the right of subrogation is equitable in nature whether or not it is referred to as such in a contract. *Home Owners' Loan Corp. v.*

*Henson*, (1940) 217 Ind. 554, 561, 29 N.E.2d 873, 875; *Ohio Cas. Group of Ins. Cos. v. Royal-Globe Ins.*, (1980) Ind.App., 413 N.E.2d 678, 680.

resulted in a waiver of the right of subrogation." *Powers v. Calvert Fire Ins. Co., supra* 216 S.C. at 316, 57 S.E.2d at 642.

■ In determining whether the trial court in the present case could find the Company had waived its right of subrogation, was estopped to assert it, or had committed a material breach of the policy by failing to pay the claim when due, this Court will not reweigh the evidence. We consider the evidence most favorable to the prevailing party together with all reasonable inferences to be drawn therefrom. If we then find evidence of probative value to sustain the judgment, we will not disturb it. *Glass v. Leland Smith Ins. Agency, Inc.,* (1981) Ind.App., 414 N.E.2d 977.

■ Several reasonable inferences which the court could have drawn from the evidence before it in the instant case supporting its ultimate judgment were 1) for a period of approximately one year, based on Fincher's testimony, the Company, without questioning its obvious liability under the policy, failed to pay Fincher's claim for legitimate medical expenses;[8] 2) the Company, in its letter to Fincher quoted *supra*, induced Fincher to settle with McCoy for an amount substantially less than his claim of $1,500; and 3) the Company, again in its letter, arbitrarily denied Fincher's claim under the policy for medical expenses *and lost income* for the stated reason that Fincher was able to recover a sum from McCoy in excess of his medical expenses alone. In regard to this third inference, we recognize the initial language in the Company's letter purported to advise Fincher of the Company's subrogation rights under the policy and of the possibility those rights might be prejudiced by Fincher's settlement efforts. However, it is also apparent the letter both induced Fincher to settle and categorically denied his claim because the opportunity for settlement existed. Accordingly, based on the foregoing reasoning and authorities as applied to the evidence presented to the trial court, the award of $467.44[9] against the Company was not error.

Although the Company also contends on appeal (as it did at trial) that Fincher was

8. The court could have found this action by the Company was a breach of its policy with Fincher. As Professor Keeton has observed, in commenting on the doctrines of waiver, estoppel and election as applied to an insurer who fails to timely respond to its insured's claims:

"A more suitable rationale for the result [of permitting the insured to sue on the policy] is that the insurer is barred from asserting violation of its subrogation rights as a defense because it has committed a material breach of contract in failing to pay the ... claim when due. The insured is privileged to pursue the tort claim against the third party in order to mitigate his damages flowing from the insurer's breach, and perhaps is even bound to do so under pain of having his claim against the insurer limited by the doctrine of avoidable consequences."

R. Keeton, Insurance Law—Basic Text § 6.8(b) at 432 (1971).

9. Although Fincher obtained a settlement of $750 from McCoy, it is evident the judgment against the Company was not a double recovery for Fincher (an issue not raised on appeal by the Company), since the court could reasonably have concluded the money received from McCoy compensated him merely for lost wages and pain and suffering arising from the accident. It is well settled that on appeal the trial court's judgment will be upheld if it can be sustained on any legal theory supported by the record. *E.g., Rees v. Heyser,* (1980) Ind.App., 404 N.E.2d 1183; *Wallace v. Rogier* (1979) Ind. App., 395 N.E.2d 297.

However, we do not agree with Fincher's contention on cross-appeal he was entitled to pre-judgment interest or punitive damages against the Company, the latter of which claims was raised for the first time on appeal and accordingly was never presented to the trial court. With respect to the claim for pre-judgment interest, we note our courts have held, as Fincher observes, such interest may properly be awarded from the time a demand is made for an ascertainable sum. *Indiana Tel. Corp. v. Indiana Bell Tel. Co., Inc.,* (1976) 171 Ind.App. 616, 358 N.E.2d 218. Accordingly, Fincher contends interest is appropriately awarded "at least" from the date Fincher filed suit and thus made a demand, since "the amount of the medical payment was ascertainable." We do not believe the amount of Fincher's medical expenses *up to the date he filed suit* is ascertainable from the evidence before the trial court, since the record merely reveals that the parties stipulated to the sum of $467.44 *as of the time of trial.* Based on such a record, we cannot conclude, as Fincher suggests, he was entitled to pre-judgment interest.

required to arbitrate his claim pursuant to a clause in the policy's uninsured motorist coverage, we find this contention to be without merit. Initially, we note the Company's objection at trial was *oral* and represented to the court the parties had "agreed" to an arbitration under the policy. The applicable policy provision, merely stated:

"If any person making claim hereunder and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured automobile because of bodily injury to the insured, or do not agree as to the amount of payment which may be owing under this Part, then, *upon written demand of either*, the matter or matters upon which such person and the company do not agree shall be settled by arbitration in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Such person and the Company each agree to consider itself bound and to be bound by any award made by the arbitrators pursuant to this Part." (Emphasis added.)

The clause in question clearly requires a "written demand" by either party before arbitration is invoked, and in the instant case, there is no indication either party made such a "written demand," despite the fact Fincher specifically mentioned the uninsured motorist provision in his complaint against the Company.

The decision of the trial court is affirmed.

CONOVER and YOUNG, JJ., concur.