[No. B026616. Second Dist., Div. Six. Jan. 25, 1989.]

RAYMOND KARDLY et al., Plaintiffs and Appellants, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant and Respondent.

**COUNSEL**

Clarence A. Wildes, Allan F. Grossman, Dennis A. Fischer and Alan S. Yockelson for Plaintiffs and Appellants.

Archbald & Spray, Kenneth L. Moes, Douglas B. Large and James P. Gazdecki, for Defendant and Respondent.

## OPINION

**GILBERT, J.**—Plaintiffs, Raymond and Esther Kardly, were involved in an automobile accident. State Farm, their insurance company, refused to pay certain claims which caused them to suffer emotional distress. Meanwhile, they won a judgment in a personal injury action against the driver of the other vehicle, and recovered damages for emotional distress. We hold that the judgment in the personal injury action does not preclude the Kardlys from seeking damages against State Farm.

### FACTS

The Kardlys' automobile was rear-ended in a traffic accident with Alma Short on November 11, 1978. The Kardlys submitted claims to defendant State Farm for collision damage, towing expenses, lost personal goods and medical expenses which resulted from the accident. State Farm paid the Kardlys for their medical expenses, and for a radio which was stolen from the car after the accident occurred. The Kardlys and State Farm could not reach a settlement of the remaining claims. State Farm suggested they sue Short if they thought the settlement offer was inadequate.

The Kardlys filed a personal injury action against Short on November 5, 1979. During the 1984 trial against Short, the Kardlys presented evidence of emotional distress they experienced as a result of the accident. The court sustained the Kardlys' objection to introduction of any evidence concerning their dealings with State Farm. The jury returned a general verdict of $63,000 in favor of the Kardlys. The Kardlys obtained satisfaction of that judgment.

In December 1981, the Kardlys had filed suit against State Farm based on assertions of a bad faith denial of their claims under the insurance contract. The Kardlys' seven causes of action were for: 1. declaratory relief, 2. breach of contract, 3. breach of the covenant of good faith and fair dealing, 4. fraud, 5. intentional infliction of emotional distress, 6. negligent infliction of emotional distress, and 7. charges of unfair practices under Insurance Code section 790.03.

On August 27, 1985, the court granted State Farm summary judgment on the fifth and sixth causes of action, for emotional distress. On January 27, 1987, at the outset of trial, State Farm successfully obtained a judgment of nonsuit. The pleadings and a stipulated statement of facts established for the purposes of the nonsuit that State Farm breached its covenant of good faith and fair dealing and committed fraud against the Kardlys.

State Farm contends that the allegations in the instant action seek duplication of the damages the Kardlys received in their prior recovery from

Short. State Farm argues that because it is a joint tortfeasor, the Kardlys are not entitled to seek a double recovery. State Farm asserts the collateral source rule does not apply.

State Farm also asserts that the Kardlys breached the subrogation clause in their insurance contract when they sued Short. Therefore, they should not be able to sue State Farm on the property damage claims.

The trial court held that even though State Farm would be liable on those causes of action remaining after the summary judgment motion, the Kardlys are barred from suing State Farm. The court concluded the Kardlys were barred by the rule against double recoveries. The court reasoned that the Kardlys had obtained full recovery of their general damages, including complete compensation for all mental distress, through satisfaction of their action against Short.

The trial court also found that because State Farm was a joint tortfeasor, an exception to the collateral source rule applied preventing recovery by the Kardlys. The court also stated that even if State Farm is not a joint tortfeasor the collateral source rule does not apply to general damages and, more specifically, to damages for mental distress.

The court also found that the collateral source rule would generally permit independent recovery on the special property damage claims, because those claims were based on the insurance contract itself, and not on tortious conduct. Nevertheless, the court held that the Kardlys were not entitled to recover such damages from State Farm because they had usurped State Farm's right to subrogation under the contract in suing Short.

### Discussion

#### Standard of review

On appeal from a judgment of nonsuit, a reviewing court must accept as true all properly pled allegations of the plaintiffs and indulge in every legitimate inference in their favor which can be drawn from the evidence. (See *Carson* v. *Facilities Development Co.* (1984) 36 Cal.3d 830, 838-839 [206 Cal.Rptr. 136, 686 P.2d 656]; *Loral Corp.* v. *Moyes* (1985) 174 Cal.App.3d 268, 272 [219 Cal.Rptr. 836].) Nonsuits are disfavored, and an appellate court will sustain one only if there is no evidence which could support a judgment for the plaintiffs as a matter of law. (*Carson, supra,* at pp. 838, 839.)

#### Did the Kardlys obtain complete relief in their suit against Short?

The court below found that the Kardlys obtained complete relief in their previous action against Short, including full compensation for mental distress occasioned by State Farm's tortious conduct.

The Kardlys argue that their action against State Farm involves some claims for wrongs entirely distinct from those involved in the suit against Short, for which compensation could not have been awarded previously.

In the personal injury action against Short, the court refused to admit evidence concerning the dealings between the Kardlys and State Farm. Because those facts were not before the jury in the Short action, the Kardlys claim that the general damages awarded could not have included compensation for all the mental distress caused by State Farm.

■ Damages for emotional distress are inextricably related to the conduct causing that distress. The more aggravated the conduct, the larger the award of damages is likely to be. The jury in the Short case did not have before it enough evidence to properly assess the emotional trauma suffered by the Kardlys.

A person who is threatened by someone with a gun, for example, will usually suffer more emotional distress and will be awarded more damages than a person who suffers emotional distress because of an insult by a clerk in a department store. On the other hand, evidence of the severity of a physical injury, such as a broken arm, is the same irrespective of whether the injury was caused by a skiing accident, a slip on a banana peel, or because someone intentionally inflicted the injury.

Even if the jury had before it all the evidence giving rise to the emotional trauma the Kardlys suffered, the jury could have felt that the extent of that emotional trauma was not warranted by Short's conduct. The amount and severity of damages for emotional distress is a question of fact for the jury to decide based on all the evidence before it. This obviously includes conduct of the defendant. (*Fletcher* v. *Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376, 397-398, 405-406 [89 Cal.Rptr. 78, 47 A.L.R.3d 286].)

Here we cannot determine the amount of damages the Kardlys received for emotional distress in the Short trial because the jury returned a general verdict. In any event, the chances of the Kardlys receiving a double recovery for emotional distress in their action against State Farm are limited. At the Short trial, the Kardlys' counsel objected to the introduction of evidence concerning emotional distress caused by State Farm. During the argument concerning the admissibility of this evidence, defense counsel argued that Short should not be responsible for Mrs. Kardly's psychiatric bills incurred as a result of State Farm's conduct. The Kardlys' counsel, Mr. Wildes, made an offer of proof concerning the evidence to support emotional distress in the future trial against State Farm. He stated that the emotional distress "is not an illness. It is limited to having been rendered incapable of placing any trust in the insurance industry because of the way that she [Mrs. Kardly] was raped by them, and that is the nature of the claim of the

emotional distress being there. [¶] It has nothing to do with a medical condition, and that this complaint is purely the doing of counsel."

The trial judge sustained the objection. At the Short trial, the Kardlys presented evidence of emotional distress that resulted in an "illness." This evidence may not be introduced at the trial against State Farm. As the Kardlys' counsel specifically stated, the emotional distress suffered as a result of State Farm's conduct "has nothing to do with a medical condition."

### *Is the collateral source rule inapplicable because State Farm is an independent tortfeasor?*

The trial court found State Farm to be a joint tortfeasor with Short. This prevented the Kardlys from invoking the collateral source rule.

■ The collateral source rule provides that if an injured person receives compensation for injuries from a source wholly independent of the tortfeasor, such compensation should not be deducted from the damages the victim otherwise obtains from the tortfeasor. This rule embodies a judicially created policy, firmly embedded in California jurisprudence, encouraging prudent investment in insurance and ensuring that victims are made whole. There is, however, an exception to the rule. Collateral recovery is not allowed where a joint tortfeasor is involved because the source of recovery is not wholly independent. (See generally *Helfend* v. *Southern Cal. Rapid Transit Dist.* (1970) 2 Cal.3d 1, 6-13 [84 Cal.Rptr. 173, 465 P.2d 61, 77 A.L.R.3d 398]; *Philip Chang & Sons Associates* v. *La Casa Novato* (1986) 177 Cal.App.3d 159, 166-170 [222 Cal.Rptr. 800].)

The allegations of the complaint show that State Farm's misconduct was intentional. The Kardlys allege State Farm breached its fiduciary duties owed them under its contract with them, and they further allege that State Farm committed fraud. ■ These allegations of misconduct are so tenuously related to Short's negligence in rear-ending the Kardlys' automobile that State Farm cannot be considered a joint tortfeasor.

*Munoz* v. *Davis* (1983) 141 Cal.App.3d 420 [190 Cal.Rptr. 400], is helpful in analyzing whether State Farm is a joint tortfeasor, even though it involves the issue of equitable indemnity rather than the collateral source rule. In *Munoz,* an injured automobile passenger hired an attorney to sue the negligent driver of the other vehicle. The attorney failed to timely file a complaint, and the passenger sued him for malpractice.

Creativity sometimes flowers under pressure. In the malpractice action, defendant attorney cross-complained, seeking equitable indemnity on the theory that since the other driver caused the accident, any damages the

passenger received from the legal malpractice action against him was the proximate result of the driver's negligence. (*Munoz* v. *Davis, supra,* 141 Cal.App.3d at p. 422.)

The court rejected this novel theory, finding that the driver bore no potential liability for the lawyer's negligence. Therefore, the driver had no responsibility to indemnify the lawyer for any damages the lawyer might suffer for his malpractice. (*Munoz* v. *Davis, supra,* 141 Cal.App.3d at p. 422.) Equitable principles, policy and logic dictated that it would be improper to shift the lawyer's liability for malpractice to the driver. (*Ibid.*) The driver's only relationship to the attorney was that his negligence happened to provide the lawyer with an opportunity to commit malpractice after the passenger hired him. (*Ibid.*) Such a relationship is far too tenuous to predicate an action for indemnity. (*Id.,* at p. 427.)

Similarly, Short bears no potential liability for State Farm's fraud and for its breach of its fiduciary duty to act in good faith and deal fairly with the Kardlys, its insureds. The Kardlys' recovery from Short for her negligent driving bears no relationship to the potential liability of State Farm in this suit. The Kardlys' claim fortuitously provided State Farm with the opportunity to commit fraud and to breach its covenant of good faith and fair dealing it owed the Kardlys under their contract. That nexus is too tenuous to support an offset of any recovery the Kardlys may obtain against State Farm under the collateral source rule.

■ Everyone is responsible for the consequences of his or her wrongs. (*Munoz* v. *Davis, supra,* 141 Cal.App.3d at p. 429.) ■ We would like to think that the commission of fraud by a fiduciary and the breach of its covenant of good faith and fair dealing are not a foreseeable consequence of automobile accidents. An insurance company that commits fraud and fails to negotiate in good faith with its insureds cannot escape liability by claiming it is a joint tortfeasor who merely aggravated the mental distress its insureds suffered from a previous accident. (See *Munoz, supra,* at pp. 426-427.)

*Munoz* is more on point than those cases cited by State Farm, which hold that an initial tortfeasor is jointly and severally liable with doctors who aggravate the original physical injury. (Cf. *Sanchez* v. *Bay General Hospital* (1981) 116 Cal.App.3d 776 [172 Cal.Rptr. 342], cited by State Farm.) There is a legally foreseeable risk that negligent medical care will ensue immediately following an automobile accident which will exacerbate the original injuries. But, the commission of the intentional tort of fraud and of tortious breach of the covenant of good faith and fair dealing is not such a foreseeable risk of an automobile accident. Such conduct is no more foreseeable than the legal malpractice which occurred in *Munoz.*

State Farm is not a joint tortfeasor. Its malfeasance arises from the breach of its fiduciary duties owed the Kardlys under the insurance contract.

Neither are we persuaded that the collateral source rule does not apply to damages for mental distress under *Waite* v. *Godfrey* (1980) 106 Cal.App.3d 760 [163 Cal.Rptr. 881].

In *Waite,* plaintiff had obtained a settlement under the uninsured motorist provision of her own insurance policy because the tortfeasor, who had set off the chain collision which injured her, was a hit-and-run driver. The plaintiff then sued another driver in the chain. That defendant sought a setoff of the plaintiff's uninsured motorist settlement, if damages were awarded against him.

After a jury awarded damages, the trial court refused to allow a setoff and the defendant appealed. On appeal, the appellate court did not view the uninsured motorist settlement as a collateral source recovery. Instead, the court found the collateral source rule, as elucidated in *Helfend, supra,* to be inapplicable where one completely recovers against one's own insurer on an uninsured motorist claim for the negligence of one of the concurrent tortfeasors. (*Waite* v. *Godfrey, supra,* 106 Cal.App.3d at pp. 776, 771-773.) Because the hit-and-run driver was a concurrent (joint) tortfeasor, the court believed a reduction from the second recovery was proper as a matter of policy. (*Id.,* at pp. 768-769.)

The insurance company is not considered a wrongdoer where recoveries are based on one's own uninsured motorist coverage. (See also *California State Auto. Assn. Inter-Ins. Bureau* v. *Carter* (1985) 164 Cal.App.3d 257, 261-262 [210 Cal.Rptr. 140, 54 A.L.R.4th 1177].) The source of the entire recovery in such situations is the insurance contract, not any independent source. (*Ibid.*; also see *Waite* v. *Godfrey, supra,* 106 Cal.App.3d at p. 775.)

Although we agree with the holding in *Waite,* we disagree with its dicta to the extent it suggests that a recovery for general damages not involving uninsured motorist proceeds are not subject to the collateral source rule. (See *Waite, supra,* 106 Cal.App.3d at pp. 773-774.) The *Helfend* decision, upon which *Waite* relied, does not support such a broad statement.

### *Did the Kardlys usurp State Farm's right of subrogation?*

Lastly, the trial court determined that the Kardlys are precluded from proceeding against State Farm on their claims for special compensatory damages, including loss of vehicle value, and other personal property, luggage and towage costs, despite the applicability of the collateral source rule to such damage claims. The trial court reasoned that they breached the

subrogation clause of their insurance contract by filing suit against Short, obtaining judgment and satisfying it. ■ Subrogation is the right of an insurer to take the place of its insured to pursue recovery from legally responsible third parties for losses paid to the insured by the insurer. (16 Couch on Insurance (2d. ed 1983) § 61:1, p. 75.)

The subrogation clause in State Farm's policy with the Kardlys states, in pertinent part: "Upon payment under this policy . . . the company shall be subrogated to all the *insured's* rights of recovery therefor and the *insured* shall do whatever is necessary to secure such rights and do nothing to prejudice them."

In the instant case, State Farm has paid for medical specials and a stolen radio. ■ An insurer, after paying for loss, is subrogated to an insured's right to sue the party responsible for the loss up to the amount paid. (See *Rossmoor Sanitation, Inc.* v. *Pylon, Inc.* (1975) 13 Cal.3d 622, 633 [119 Cal.Rptr. 449, 532 P.2d 97].) To the extent State Farm paid for certain damages, the subrogation clause applies. It does not apply, however, as to the amounts not paid.

■ Upon appeal from this nonsuit, we must view the facts most favorably to the Kardlys. (*Carson* v. *Facilities Development Co., supra,* 36 Cal.3d at pp. 838-839.) In this case, State Farm failed to allege as an affirmative defense to the complaint the Kardlys' breach of the subrogation clause. ■ State Farm argues that it could not assert such a defense because when the complaint was filed the Kardlys had not collected from Short. If, as State Farm contends, its subrogation rights were destroyed when the Kardlys satisfied their judgment against Short, then the filing of their action against Short potentially prejudiced those rights. Although those rights may not have come into fruition, if at all, until sometime in the future, State Farm was aware that the Kardlys were allegedly acting in violation of the subrogation clause.

By failing to plead a breach of that clause, State Farm waived the allegation. (16 Couch on Insurance, *supra,* at § 61:15, p. 91.) The stipulation provided that State Farm may not assert pleading defects on appeal as a separate basis for affirming any judgment of dismissal. (E.g., the Kardlys' failure, if any, to allege waiver or estoppel as to the subrogation clause in the contract is waived by stipulation. [See *Insurance Co. of the West* v. *Haralambos Beverage Co.* (1987) 195 Cal.App.3d 1308, 1320 (241 Cal.Rptr. 427).])

Moreover, it would be inequitable to preclude the Kardlys from suing State Farm for damages not paid. The stipulation established, for purposes of this nonsuit, that State Farm committed fraud and tortiously breached its covenant of good faith and fair dealing with the Kardlys, after it made only

partial payment of special damage claims. (See *Patent Scaffolding Co.* v. *William Simpson Constr. Co.* (1967) 256 Cal.App.2d 506, 511 [64 Cal.Rptr. 187].) It encouraged the Kardlys to sue Short for the remaining, unpaid claims. (Cf. *Flanary* v. *Reserve Insurance Company* (1961) 364 Mich. 73 [110 N.W.2d 670, 671], and *Chandler* v. *State Farm Mut. Automobile Ins. Co.* (1947) 200 Miss. 702 [28 So.2d 571, 573], cases in which the insurance companies were unaware of plaintiffs' suits against the respective tortfeasors.)

In *Powers* v. *Calvert Fire Ins. Co.* (1950) 216 S.C. 309 [57 S.E.2d 638, 642, 16 A.L.R.2d 1261], cited by the Kardlys, an insurance company refused to cover any losses of its insured. Its breach of its contract of insurance resulted in a waiver of the right of subrogation. Here, State Farm, unlike the insurance company in the *Powers* case, did not refuse to cover all losses whatsoever. Nevertheless, the stipulation states facts establishing similar wrongdoing in the failure to pay a portion of the Kardlys' losses. This court, in equity and good conscience, must view these facts as an estoppel to and a waiver of State Farm's claim of subrogation, which it presents as a shield against further proceedings. Allowing the Kardlys to proceed would not destroy the general objectives of subrogation. The Kardlys may not seek reimbursement for payments already made by State Farm. (See 16 Couch on Insurance, *supra,* § 61:18, p. 93.)

The Kardlys may proceed against State Farm on their complaint, as narrowed by the pretrial motion for summary judgment.

The judgment is reversed. Appellants are awarded costs on appeal.

Stone (S. J.), P. J., and Abbe, J., concurred.

A petition for a rehearing was denied February 23, 1989, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied April 19, 1989.