[No. B070937. Second Dist., Div. Six. Jan. 3, 1995.]

RAYMOND KARDLY et al., Plaintiffs and Respondents, v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
Defendant and Appellant.

## Counsel

Horvitz & Levy, Barry R. Levy, Christina J. Imre, Julie L. Woods, Archbald & Spray and Kenneth L. Moes for Defendant and Appellant.

Albert F. Coombes for Plaintiffs and Respondents.

## Opinion

STONE (S. J.), P. J.—State Farm Mutual Automobile Insurance Company (State Farm) appeals the judgment against it for its alleged bad faith refusal to settle an insurance claim filed by Raymond and Esther Kardly.[1] The jury awarded the Kardlys $80,000 contract and compensatory damages, but no

---

[1] The Kardlys, in addition to responding to State Farm's contentions on appeal, argue that the trial court erred by admitting certain evidence during the punitive damage phase of the

punitive damages. State Farm contends it was prejudiced by the trial court's exclusion of relevant evidence on the issue of bad faith. We agree, and reverse the judgment.

This action arises out of State Farm's handling of a property damage claim filed by the Kardlys. The claim resulted from an automobile accident in 1978 wherein Mrs. Kardly was rear-ended by Alma Short. Mrs. Short was insured by the Automobile Club of Southern California (AAA). The Kardlys submitted a claim to State Farm for collision damage, lost personal goods and towing expenses. They contended in their complaint against State Farm that it maliciously and in bad faith denied their insurance claim.

In the meantime, the Kardlys had sued Short and obtained a general verdict against her for $63,000. Following this judgment, the trial court granted State Farm summary judgment for the Kardlys' emotional distress causes of action. Thereafter, State Farm was granted a judgment of nonsuit. The trial court ruled that, although State Farm could be liable on the Kardlys' causes of action remaining after the summary judgment, the Kardlys were barred from recovering against State Farm. The court reasoned that, because State Farm was a joint tortfeasor with Alma Short, an exception to the collateral source rule applied. The court further determined that even if State Farm was not a joint tortfeasor, the collateral source rule still did not apply to the general damages the Kardlys recovered from Short.

In *Kardly* v. *State Farm Mut. Auto. Ins. Co.* (1989) 207 Cal.App.3d 479 [255 Cal.Rptr. 40] (*Kardly I*), we reversed the judgment of nonsuit against the Kardlys, holding that pursuant to the collateral source rule, the Kardlys' allegations of misconduct against State Farm were so tenuously related to Short's negligence, that State Farm could not be considered a joint tortfeasor. We further were unpersuaded that the collateral source rule did not apply to damages claimed against State Farm.

The case went back to trial. The trial court granted the Kardlys' motion to exclude any evidence of their involvement with AAA concerning the subject accident during opening argument. It determined the AAA evidence was not relevant, was prejudicial pursuant to Evidence Code section 352, and was barred by our decision in *Kardly I*. This evidence would have shown that after State Farms' adjuster Sylvia Hines offered the Kardlys a settlement of $1,066, Mrs. Kardly allegedly informed Hines that she and Mr. Kardly had decided to pursue a claim for their total losses against AAA (the Kardlys believed they were entitled to at least $1,600 damages).

---

trial. This argument is not reviewable. The Kardlys did not file a cross-appeal. A respondent who fails to file a cross-appeal cannot urge error on appeal. (*California State Employees' Assn.* v. *State Personnel Bd.* (1986) 178 Cal.App.3d 372, 382, fn. 7 [223 Cal.Rptr. 826].)

■ The Kardlys contend that, since their exclusion motion only was granted for the purpose of opening argument, State Farm was free at any time during the trial to make an offer of proof for the admission of the AAA evidence. The Kardlys concede, however, that the liability proceedings were conducted as if the court's ruling had excluded the evidence from the entire trial and not just the opening statements.

It is plain from the record that everyone, including the court and the Kardlys' counsel, presumed the court's exclusion of the AAA evidence applied to the entire proceedings. In this sense, any error by State Farm in failing to make an offer of proof as to the admissibility of the AAA evidence, cannot form a basis for affirming the judgment. When a party by his conduct induces the commission of an error, he is estopped from asserting it as a ground for reversal. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 301, p. 313.)

Indeed, the Kardlys took tactical advantage of the exclusion of the evidence throughout the liability trial. They requested an admonishment of Ms. Hines when she started to testify that she was prevented by the court's ruling from explaining State Farm's inaction on the Kardlys' claim. State Farm's claim file was redacted, pursuant to a request by the Kardlys, to eliminate any reference to the AAA evidence, including a written notation by Hines that Mrs. Kardly stated she intended to pursue her entire claim with AAA instead of with State Farm. Also, counsel for the Kardlys suggested during cross-examination of Hines that Hines had failed to properly document her conversations with Mrs. Kardly and closed the file simply because the Kardlys would not accept Hines's settlement offer. Further, during his closing statement, the Kardlys' counsel argued that State Farm's excuse for closing the Kardlys' file was weak. Finally, in opposition to State Farm's motion for new trial, the Kardlys argued that the court had not abused its discretion in excluding the AAA evidence from the trial.

Following the liability trial, the jury awarded contract damages to the Kardlys of $1,650. It also found that State Farm had violated the implied covenant of good faith and fair dealing and Insurance Code section 790.03, subdivision (h). Mrs. Kardly was awarded $53,328 and Mr. Kardly was awarded $25,000 in compensatory damages.

What happened next was highly unusual. During the punitive damage phase of the trial, the judge granted State Farm's motion to admit the AAA evidence. The judge stated he may have prejudicially erred in interpreting *Kardly I*, and excluding the AAA evidence from the liability portion of the trial.

The court remarked: "Now how did the trial develop? I just couldn't belief [*sic*] how the trial developed. It certainly was not as I had anticipated. I assumed there would be some minor discrepancies in the evidence . . . . It didn't really develop that way. Miss [Sylvia] Hines, in substance, had very minimal contact with [Mrs.] Kardly, if you believe her testimony. [¶] If you believe [Mrs.] Kardly's testimony, [the contract] was continuing on and on and on and [Hines committed] a real willful disregard of her rights. She begged [Hines] to give her some money so she could buy some Christmas presents. She made these emphatic statements, all of which were denied [by Hines]. [¶] What could [State Farm] present, at least [to] give the jury some opportunity to weigh the credibility of the two opposing people, an issue that I really hadn't considered. . . . [State Farm] couldn't even present to the jury evidence [from which] the jury might find would at least excuse, to some extent, [State Farm's] conduct . . . . I just bound [State Farm's] hands to the opportunity [of presenting its] state of mind . . . . I didn't give them the opportunity. I am giving them the opportunity now."

After hearing the AAA evidence, the jury found no punitive damages should be awarded against State Farm.

The next thing that happened is even more curious. Before discharging the jury, the judge *apologized to the jurors* for excluding the AAA evidence in the liability phase. He stated he wrongly thought *Kardly I* had prohibited the admission of any evidence of involvement by another insurer. He told the jurors this probably had been prejudicial to State Farm: "As the evidence [in the liability phase] developed, I got very concerned personally because it was my opinion that [the exclusionary] ruling had tied the hands of [State Farm] in this case to the point that I probably deprived them of a fair trial. Left in a vacuum, [the Kardlys argued that State Farm] just peremptorily just [*sic*] closed their file. [State Farm] didn't give it any more consideration. [State Farm] made up [its mind]. . . . [¶] Judges make pretrial rulings all the time. We have to. Obviously, we some times make mistakes. That's why we have appellate judges to tell us what we've done wrong. I hope at some later date I won't be told that I did wrong in this case. I may have, but in good conscience I made the rulings all the way through that I thought were appropriate."

Why the trial court did not declare a mistrial is uncertain. From his apology to the jury, it appears as if the judge wanted the appellate court to decide whether his admitted error was prejudicial to State Farm. It was.

■ The trial court did misinterpret *Kardly I*. As State Farm correctly analyzes, our earlier case did not address the admissibility of other insurer

evidence in the context of a bad faith claim. Here, State Farm was not offering the AAA evidence to offset the Kardlys' damages, but to explain its conduct in not paying on the Kardlys' insurance claim. The collateral source rule did not prohibit the AAA evidence for the latter purpose. It has always been the rule that the existence of other insurance may properly be referred to in a case if the evidence is otherwise admissible. (*Blake* v. *E. Thompson Petroleum Repair Co.* (1985) 170 Cal.App.3d 823, 831 [216 Cal.Rptr. 568].)

As State Farm correctly argues, the AAA evidence was highly relevant on its defense. ██ When an insurer unreasonably and in bad faith withholds payment of its insured's claim, it is subject to liability in tort. (*Frommoethelydo* v. *Fire Ins. Exchange* (1986) 42 Cal.3d 208, 214-215 [228 Cal.Rptr. 160, 721 P.2d 41].) There is no tort, however, and no concomitant violation of Insurance Code section 790.03, subdivision (h), if the insurer refuses policy benefits with proper cause. (*Twaite* v. *Allstate Ins. Co.* (1989) 216 Cal.App.3d 239, 255-257 [264 Cal.Rptr. 598]; *California Shoppers, Inc.* v. *Royal Globe Ins. Co.* (1975) 175 Cal.App.3d 1, 54-55 [221 Cal.Rptr. 171].) ██ Here, State Farm justifiably sought to present the AAA evidence to explain that it had proper cause in not paying insurance benefits to the Kardlys, i.e., that the Kardlys allegedly had decided to pursue their claim only against AAA.

The prejudice to State Farm, conceded by the trial judge, is actual and not merely theoretical.

First, without the AAA evidence, State Farm could not present a credible reason why it had closed the Kardlys' claim file. It was left with the implausible explanation that it thought the Kardlys had simply decided not to pursue their claim.

Second, the Kardlys' trial counsel took tactical advantage of the exclusion of the evidence.

Third, the jury awarded compensatory damages against State Farm when it did not have the AAA evidence before it, and denied punitive damages against State Farm after the AAA evidence was admitted.

From all of these circumstances, it is not probable the jury would have found against State Farm on the issue of its bad faith liability had the AAA evidence been admitted.

We conclude the judgment must be reversed since State Farm was deprived of the ability to present probative evidence on its defense, resulting in

a denial of due process and a miscarriage of justice. (U.S. Const., 14th Amend.; Cal. Const., art. VI, § 13.)

We briefly discuss State Farm's additional contention, that prejudicial instructional error occurred.

State Farm contends the trial court gave incomplete and misleading instructions on the issue of an insurer's bad faith liability. The result, according to State Farm, was to suggest to the jury that it was strictly liable for failing to pay on the Kardlys' claim.

State Farm first argues the court gave the Kardlys' requested instruction that bad faith may exist without an insurer's intent to harm the insured.[2] The propriety of this instruction cannot be determined now. State Farm's intent in failing to pay on the Kardlys' claim may not be an issue in the second trial, since it will be able to offer a plausible explanation, denied to it in the first trial, why it did not pay on the Kardlys' claim.

State Farm next argues the court improperly refused its requested special instruction that bad faith could not be found where the insurer acted with proper cause.[3] In view of State Farm's inability to present evidence showing its failure to pay under the parties' insurance contract may have been justified, the instruction would not have aided State Farm. However, this does not mean that the trial court would not commit error by refusing State Farm a similar instruction on retrial. State Farm is entitled, like the Kardlys, to jury instructions on its theories supported by the evidence. (*Hasson* v. *Ford Motor Co.* (1977) 19 Cal.3d 530, 543 [138 Cal.Rptr. 705, 564 P.2d 857, 99 A.L.R.3d 158].)

The judgment is reversed. The case is remanded for retrial. Costs on appeal are awarded to State Farm.

Gilbert, J., and Yegan, J., concurred.

---

[2]This instruction stated: "The duty of good faith and fair dealing may be violated without any intent to harm the insured."

[3]The proposed instruction read in pertinent part: "Before an insurer can be found to have breached its obligation to deal fairly and act in good faith by refusing to pay policy benefits, it must have done so without proper cause. [¶] A mistaken withholding of benefits under circumstances where the policyholder has contributed to the mistake may be a proper cause for such withholding."