Filed 1/29/26  Shire v. Iberdemaj CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JAMES RANDALL SHIRE et al., | F089268 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 20CECG02540) |
| RAME DEME IBERDEMAJ, | **OPINION** |
| Defendant and Respondent. | |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Kristi C. Kapetan, Judge.

Bhanji Law Firm, Alkarim Bhanji and Diallah Bhanji for Plaintiffs and Appellants.

Cole Pedroza, Kenneth R. Pedroza, Paul D. Kind; Salinas Law Group and Richard S. Salinas for Defendant and Respondent.

-ooOoo-

**INTRODUCTION**

Appellant James Randall Shire appeals following the grant of a nonsuit at the close of evidence in his medical malpractice case against respondent Rame Deme

Iberdemaj, a surgeon at St. Agnes Medical Center (SAMC), who performed an emergency appendectomy on appellant in 2019.[1]  Appellant was readmitted to SAMC shortly after being discharged and was treated with further antibiotics and painkillers by respondent.  Approximately a month later, appellant went to see his primary care provider, complaining of continued pain and fevers.  He was eventually referred to another surgeon, who completed a second surgery to remove an abscess that had formed.  During the second surgery, approximately six inches of appellant's bowel was removed, which has caused appellant to suffer continuing side effects from the surgery.

The trial court granted a motion for nonsuit at the close of evidence, noting that appellant's sole theory of medical malpractice was that respondent failed to explain to appellant that an appendiceal stump remained after the surgery.  Critically, no evidence was presented that the surgery itself fell below the standard of care in any way.  Appellant presented no evidence showing that, had he been told an appendiceal stump remained, he could have or would have sought sooner or different treatment.  Further, no evidence was presented that any sooner or different treatment would have changed appellant's outcome, either in the sense that a second surgery would have been unnecessary or that the portion of his bowel would not have needed to be removed.  Given this, we find no error in the granting of nonsuit in this case and affirm the court's judgment below.

**FACTUAL AND PROCEDURAL BACKGROUND**

In June 2019, appellant went to the emergency department of SAMC, complaining of abdominal pain and fevers.[2]  He was admitted for an appendectomy.  Respondent was

---

[1]     While SAMC was initially a defendant in the action, the case against it did not proceed to trial, and as such, the sole respondent here is Dr. Iberdemaj.

[2]     On review of the granting of a motion for nonsuit, we review the facts in favor of appellant, granting every reasonable favorable inference and presumption to the non-moving party, and determine whether the evidence, interpreted in appellant's favor, would be legally sufficient to permit a jury to find in his favor.  (*Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 291; *Stonegate Homeowners Assn. v. Staben*

appellant's surgeon, and he did not meet respondent prior to the surgery as he was mostly unconscious. Following surgery, respondent met with appellant, and advised him that his appendix "was eaten up by the pus" and could not be located during the surgery. Appellant was in the hospital for four or five days, and was then discharged. Respondent did not tell appellant or his wife that any portion of the appendix might remain in his body.

Appellant returned to the hospital the day after his discharge, because he was in pain and feverish. He waited in the emergency room for an extended period of time, but was not admitted to the hospital. After a number of hours, he left, and went to see his primary care provider, a nurse practitioner, the next day. The nurse practitioner referred appellant back to the emergency room, at which point he was admitted to the hospital. Appellant again saw respondent after his readmission, at which point respondent prescribed pain medication and antibiotics. Appellant was discharged a day or two later. Appellant testified respondent told him that he had "cleaned it up," apparently referring to the appendiceal infection, but "there was another pus pocket started up." According to appellant, respondent "thought that it might be best to go in again to take care of it and keeping up on all the pain medicines and all the IV and antibiotics." However, it does not appear that appellant consented to, or respondent ever performed, a second surgery on appellant.

Appellant testified that he returned to his primary care provider approximately a month later because he was feeling sick and experiencing pain, and she referred him to another surgeon, Dr. Concepcion. Dr. Concepcion told appellant he believed his appendix had burst. According to appellant's wife, Dr. Concepcion told them appellant's appendix was still inside him, and that only the tip of the appendix had ruptured.

---

(2006) 144 Cal.App.4th 740, 745–746; *Harper v. Northwestern Pacific Railroad Co.* (1939) 34 Cal.App.2d 451, 452.) Accordingly, our summary of the facts in this case is framed in the light most positive to appellant's case.

Appellant's wife testified that Dr. Concepcion was "angry," and said "the doctor who did the first surgery, if he couldn't find the appendix he should have opened him up because the first part was a laparoscopy. And sometimes if they miss something they'll just open them up." Dr. Concepcion concluded the appendix may have ruptured and an abscess may have formed. Dr. Concepcion performed a second surgery in September 2019, and ultimately removed approximately six inches of appellant's bowel. While the second surgery was initially laparoscopic, Dr. Concepcion converted it into an open procedure in order to fully remove the infection. According to appellant, he has suffered pain, fear, and other emotional and physical complications since the surgeries.

Appellant filed suit in August 2020. The matter progressed to a jury trial in November 2024. Following several days of testimony, respondent filed a motion for nonsuit on November 18, 2024. The court granted the motion for nonsuit, finding that no evidence of causation had been presented. A notice of appeal was timely filed.

The sole evidence explaining the alleged breach of the standard of care was from appellant's expert, Dr. Leo Gordon, whose deposition testimony was read into the record. Dr. Gordon opined that if respondent had failed to tell appellant that an appendiceal stump remained after surgery, which could cause potential future problems, then he breached the surgical standard of care. However, Dr. Gordon offered no testimony on causation. When asked what difference it would make in the outcome if respondent had communicated this information to appellant, Dr. Gordon noted such an assessment would be "speculation."

## DISCUSSION

### A. Legal Standards

We review the trial court's grant of a motion for nonsuit de novo, viewing "the evidence in the light most favorable to appellant, resolving all conflicts in its favor." (*Legendary Investors Group No. 1, LLC v. Niemann* (2014) 224 Cal.App.4th 1407, 1412.) " 'A defendant is entitled to a nonsuit if the trial court determines that, as a matter

4.

of law, the evidence presented by plaintiff is insufficient to permit a jury to find in his favor. [Citation.] "In determining whether plaintiff's evidence is sufficient, the court may not weigh the evidence or consider the credibility of witnesses. Instead, the evidence most favorable to plaintiff must be accepted as true and conflicting evidence must be disregarded." ' " (*Applied Medical Distribution Corp. v. Jarrells* (2024) 100 Cal.App.5th 556, 593.) "Nonsuits are disfavored, and an appellate court will sustain one only if there is no evidence which could support a judgment for the plaintiffs as a matter of law." (*Kardly v. State Farm Mut. Auto. Ins. Co.* (1989) 207 Cal.App.3d 479, 483.)

The elements of a negligence cause of action are well-settled in the law, and require a showing of a legal duty, a breach of that duty, and that the breach proximately caused resulting injury. (*Miranda v. Bomel Construction Co., Inc.* (2010) 187 Cal.App.4th 1326, 1335.) "Ordinarily, a plaintiff may establish proximate cause without the testimony of an expert by providing evidence that indicates the defendant's conduct was a substantial factor in producing plaintiff's damages." (*Id.* at p. 1336.) "However, '[t]he law is well settled that in a personal injury action causation must be proven within a reasonable medical probability based upon competent expert testimony. Mere possibility alone is insufficient to establish a prima facie case. [Citations.] That there is a distinction between a reasonable medical "probability" and a medical "possibility" needs little discussion. There can be many possible "causes," indeed, an infinite number of circumstances which can produce an injury or disease. A possible cause only becomes "probable" when, in the absence of other reasonable causal explanations, it becomes more likely than not that the injury was a result of its action. This is the outer limit of inference upon which an issue may be submitted to the jury.' " (*Ibid.*; see *Jones v. Ortho Pharmaceutical Corp.* (1985) 163 Cal.App.3d 396, 402–404 [upholding grant of nonsuit in medical products liability case and noting "[t]he fact that a determination of causation is difficult to establish cannot, however, provide a plaintiff with an excuse to dispense

5.

with the introduction of some reasonably reliable evidence proving this essential element of his case"]; *Bromme v. Pavitt* (1992) 5 Cal.App.4th 1487, 1499 ["Even with proper medical intervention, it was more likely than not [the plaintiff] would die from the cancer. Because proper care after June 1981 would not have averted [the plaintiff's] death, the absence of such care was not of itself sufficient to bring about her death."].)

**B.     No Evidence of Causation was Presented**

Appellant's sole theory at trial was that respondent breached the standard of care by failing to advise appellant that an appendiceal stump remained following his initial appendectomy, and that that appendiceal stump could cause future infections. However, appellant failed to present any evidence that, if respondent *had* advised him an appendiceal stump remained, the outcome would have been different. No evidence was presented suggesting appellant would have done something differently. No evidence was presented that, having access to that information, appellant would not have required a second surgery. And no evidence was presented that, if appellant had been given that information, any second surgery would not have required the removal of a portion of his bowel.

Importantly, appellant specifically neither argued nor presented evidence that there was any malpractice in the manner the initial procedure was performed. During opening statements, appellant's attorney advised the case was "very simple because we're not getting Monday-morning quarterbacking to see how actually the doctor did the procedure. It's not fair for us to do that because it was an emergency situation. The surgery needed to be done and nobody is disputing that." Later, he reiterated, "It's not about the surgery," and "again, we're not criticizing [respondent] for the decision, for the choice that he made on that surgery, because the emergency surgery was needed." Instead, the case was about the surgeon's "duty to inform his patients about the risks after the surgery has been completed." Appellant argued that respondent "never told [appellant] there might be an infected remnant left behind that may cause you harm in the

6.

future." The lack of any claim of negligence concerning the performance of the first surgery was borne out by appellant's own expert, who testified both that "[t]he surgery was indicated, and the surgery was performed within the standard of care."

The sole act of malpractice alleged in this case was respondent's failure to tell appellant an appendiceal stump was left behind following the first surgery. Appellant's expert, Dr. Gordon, stated: "I have an opinion in this case that follows two paths: Path A, and Path B. [¶] If [respondent] failed to tell [appellant] that [appellant] had an appendiceal remnant which could possibly cause problems in the future, [respondent] breached the surgical standard of care. That's A. [¶] B, if [respondent] told [appellant] that there was an appendiceal stump left behind because of the severity of inflammation during the initial surgery and that that potentially could cause a problem in the future, [respondent] was within the surgical standard of care." Dr. Gordon opined that he had not seen evidence either way which indicated that respondent had advised appellant of this information, and therefore was rendering a bifurcated opinion.

Of critical importance, however, is Dr. Gordon's testimony that he would offer no opinion on causation in this case, noting "[t]here will be no opinions regarding causation in this case on my behalf." Dr. Gordon was asked, "what difference in the outcome in this case would it have made if … under this ongoing hypothetical, if the jury determines that [respondent] did not tell [appellant] [about the appendiceal stump]?" Dr. Gordon responded, "Well, that's speculation on my part. My opinion begins and ends with the transmission of the information regarding the status of the remaining appendix. [¶] As to what [appellant] would have done, what might have happened, what could have happened, I'm expressing no opinion on that."

The second treating physician, Dr. Concepcion, was not designated as an expert, but instead testified as a percipient witness. Dr. Concepcion did not offer any testimony about whether respondent violated the standard of care. He testified that he had never reviewed respondent's operative report, nor seen any pathology reports or other scans

7.

from appellant's admission to SAMC. As such, he offered no testimony that any breach of the standard of care on respondent's part had necessitated the second surgery, or that the second surgery would not have been necessary had respondent done something differently. Dr. Concepcion stated that the removal of the portion of appellant's bowel was necessitated by the infection. However, he did not testify that the removal of the portion of the bowel could have been avoided if appellant had been advised that an appendiceal stump remained.

The sole testimony Dr. Concepcion offered, which appellant argues establishes causation, is that, when asked about the nature of the scar tissue adhering to the area in appellant's abdomen, Dr. Concepcion explained, "that's part of the natural progress of the infection of the appendix. Appendix ruptured. The surrounding tissue like the cecum tried to wall that abscess." While the "natural progress" of an infection might be sufficient to show causation if the malpractice alleged was the failure to cure the infection, that was not the malpractice alleged here. Again, it was not alleged that respondent committed malpractice in connection with the performance of the surgery. The "natural progress" of an infection is not sufficient to show causation when the malpractice alleged was instead that appellant was not told an appendiceal stump remained after the first surgery.

The court heard argument on November 19, 2024, at which it noted, "no one is claiming that leaving the appendiceal stump was below the standard of care. If that's what they were claiming and then injury resulted, there's direct cause, but no one is saying that. Also, no one is saying that the fact that [respondent] didn't tell him that a stump was left caused the injury to [appellant]. That is the problem with the proof in this case. There's no evidence as to causation. … And you have to have a medical expert give that testimony. There's been nobody who said that."

Regardless of whether nonsuits are generally disfavored, the trial court was clearly correct in granting nonsuit in this case. Appellant does not identify anywhere in the

8.

record where he testified he would have sought treatment sooner or more diligently if he knew an appendiceal stump remained. Even if he had, we are not pointed to any testimony that, if treatment had been sought sooner, appellant could have avoided a second surgery or that the outcome of the second surgery would have been different. Such evidence would have necessitated expert testimony, as it is clearly outside the realm of knowledge of a layperson. Appellant's expert explicitly and repeatedly disclaimed offering such evidence and stated he would offer no testimony on causation. As such, we find appellant has not " 'proven within a reasonable medical probability based upon competent expert testimony' " that his injuries were caused by the negligence alleged. (*Miranda v. Bomel Construction Co.*, *Inc.*, *supra*, 187 Cal.App.4th at p. 1336.)

All of appellant's arguments and citations in the briefs before us are directed towards showing that leaving the appendiceal stump necessitated the second surgery. Put somewhat differently, in terms of causation, appellant contends the failure of the first surgery necessitated the second surgery. However, appellant introduced no evidence that the first surgery fell below the standard of care. Indeed, even appellant's expert testified the first surgery "was performed within the standard of care." As such, there is no evidence which connects the negligence alleged with the injuries suffered. Nonsuit was appropriately granted here.

## **DISPOSITION**

Finding no error, we affirm the trial court's judgment.


                                                                    DE SANTOS, J.

WE CONCUR:



MEEHAN, Acting P. J.



SNAUFFER, J.