Filed 7/16/13  In re A.H. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.H. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E056869 |
| Plaintiff and Respondent, | (Super.Ct.Nos. J243785 & J243786 & J243787 & J243788 & J243789 |
| v. | & J243790 & J243791 & J243792) |
| G.B. et al., | OPINION |
| Defendants and Respondents; | |
| A.H. et al., | |
| Appellants. | |

APPEAL from the Superior Court of San Bernardino County.  Cheryl C. Kersey, Judge.  Affirmed.

Linda S. Rehm, under appointment by the Court of Appeal, for Appellants.

Karen J. Dodd, under appointment by the Court of Appeal, for Defendant and Respondent G.B.

Konrad S. Lee, under appointment by the Court of Appeal, for Defendant and Respondent S.H.

Jean-Rene Basle, County Counsel, Jamila Bayati, Deputy County Counsel for Plaintiff and Respondent.

At a contested jurisdiction and disposition hearing, the juvenile court dismissed the allegations that (1) children, J.J. and J.B., were sexually abused by their half-sibling's father, thus placing the other half-siblings, K.E., S.H., L.H.1, L.H.2, and A.H., at risk for the same or similar abuse (Welf. & Inst. Code, § 300, subd. (j));[1] and (2) J.B. and J.J. were sexually abused and defendant and respondent G.B. (Mother) failed to protect J.B. and J.J. from the abuse (§ 300, subd. (d)).

Appellants K.E., L.H.1, L.H.2, A.H., S.H., K.H. J.B., and J.J. (collectively "Minors"), appeal the juvenile court's ruling dismissing the sexual abuse allegations. Minors assert the juvenile court erred by dismissing the sexual abuse allegations because they were supported by substantial evidence. San Bernardino County Children and Family Services (the Department) supports Minors' contention. We affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

### A.    BACKGROUND

Mother has eight children: (1) J.J., a female born in 1995; (2) J.B., a female born in 1996; (3) K.H., a female born in 1998; (4) S.H., a male born in 2001; (5) K.E., a

---

[1] All subsequent statutory references will be to the Welfare and Institutions Code unless otherwise indicated.

2

female born in 2004; (6) L.H.1, a female born in 2006; (7) L.H.2, a female born in 2007; and (8) A.H., a male born in 2008. J.B. has her own child. J.J. was pregnant during this dependency. There are five fathers associated with Minors: (1) M.J. is J.J.'s presumed father; (2) J.B.1 is J.B.'s alleged father; (3) K.H.1 is the presumed father of K.H.; (4) K.E.1 is the presumed father of K.E.; and (5) defendant and respondent S.H.1 (Father) is the presumed father of S.H., L.H.1, L.H.2, and A.H.

Mother appeared to suffer from Dissociative Identity Disorder/Multiple Personality Disorder. Mother had various personalities that would surface during times of stress. Mother had not sought medical treatment for her mental disorder or been officially diagnosed. In October 2010, Mother had a voluntary family maintenance case with the Department. The voluntary case was closed after six months when Mother failed to participate in the services being offered to her.

B.    DETENTION

In April 2012, the Department received a referral reflecting Mother choked five year old L.H.1 and threw a shoe at the child. On April 12, a Department social worker visited Mother and several of the children at their home. The social worker knew Mother from the prior voluntary maintenance case and found Mother's demeanor to be "out of character." Mother admitted "'snatching'" L.H.1, because the child was having a tantrum and refused to get ready for school. Mother agreed to participate in a team decision making meeting with the Department.

The team decision making meeting took place on April 17. During the meeting, Mother suffered "an extreme change in her affect." A clinician from the Department of

3

Behavioral Health was present at the meeting and assessed Mother. It appeared that one of Mother's alternate personalities surfaced during the meeting. Mother, as this different personality, introduced herself as Keisha. Keisha said she babysat the children when Mother was stressed and "not available."

A social worker contacted the police. Officers from the San Bernardino Police Department found Mother was a danger to the children and detained her at a psychiatric facility. The Department detained seven of the children. J.B. was residing with her baby at her boyfriend's home; she was not detained. It appeared J.B. also suffered from Dissociative Identity Disorder, and she was taking medication for depression. The seven children were placed in three separate foster homes.

C.    JURISDICTION/DISPOSITION

Father had been diagnosed as suffering from Bipolar Disorder and Schizophrenia. Father had a history of abusing methamphetamines. The Department's report reflected the following information related to the sexual abuse allegations: Father was accused of sexually abusing J.J. and J.B. in May 2007. The Riverside County Department of Public Social Services (Riverside Department) investigated the allegations. Mother filed a police report after J.J. and J.B. told Mother that Father sexually abused them. The police questioned Father and told him not to have contact with J.J. and J.B. during the investigation. A criminal investigation and child welfare investigation took place. However, Mother, J.J., and J.B. could not be located after the investigations were initiated, and therefore, the investigations ceased.

4

In August 2007, a detective and social worker located the family after Father "absconded with the children" and "fled" to Riverside County. At that point, the sexual abuse investigation resumed. J.J. and J.B. (the Girls) were taken for forensic interviews by Riverside County Sheriff's detectives. The Girls stated Father touched their vaginal and anal areas with his hand, both under and over their clothes. Since there was not penetration, forensic exams were not conducted.

The forensic interviewer and law enforcement officers found the Girls statements "were credible" and "planned to file felony charges" against Father; however, the charges were never filed. The information was cross-reported to the Department and the Riverside Department, but "[t]he allegations were found inconclusive." The Girls continued to maintain that the sexual abuse occurred. Father told the Department he was falsely accused.

Mother and Father had a "long history of domestic violence that has continued for more than 11 years." Father had stalked Mother and always tried to locate her when he was released from incarceration.

D.     PETITIONS

The Department's petitions included various allegations regarding Mother's failure to protect Minors. (§ 300, subd. (b).) The petitions of K.E., A.H., S.H., L.H.1, and L.H.2 also included an allegations that J.J. and J.B. were sexually abused by Father, thus placing K.E., A.H., S.H., L.H. 1, L.H.2 at risk for the same or similar abuse. (§ 300, subd. (j).) The petitions of J.B. and J.J. alleged they were victims of sexual abuse, and Mother failed to protect them from the abuse. (§ 300, subd. (d).)

5

The petition of K.H. did not include allegations related to sexual abuse. K.H.'s father removed K.H. from Mother's custody when the sexual abuse allegations were made involving Father, J.J., and J.B., but eventually returned K.H. to Mother's care.

E.    HEARING

The juvenile court held a contested jurisdiction and disposition hearing on July 31, 2012. Father was present, in custody, at the contested hearing. Father contested the sexual abuse allegations. At the beginning of the hearing, Father's attorney (Levy) stated his intent to call Mother as a witness, in order to ask about J.B. and J.J. informing Mother of the sexual abuse. The juvenile court suggested Levy call J.B. and J.J. as witnesses. Levy explained that Father did not "want to put the kids through any more stress," so Levy was going to limit his witnesses to adults.

The juvenile court told Levy, "I understand where you're coming from, sir, but the fact that they may have told their mom or not doesn't mean anything unless they tell me what happened because it could be made up, and I don't know that . . . . [T]he fact that she may know about it or not isn't persuasive." Father explained that Mother would not testify about being told of the allegations; rather, she would say the Girls created the allegations in order to make Mother leave Father and move away.

Levy called J.J. as a witness. J.J. was 17 years old when she testified. J.J. explained that when she was eight years old, she was living with Mother, Father, J.B., K.H., and S.H., in Blythe. Twice during that time, Father touched J.J. inappropriately. The first time, Father laid behind J.J. on a bed as they both laid on their sides. Father placed his hand inside J.J.'s underwear and rubbed her vagina. After the first incident,

6

J.J. told a family friend and Mother about the touching. Mother moved J.J. into a different home, away from the family, but eventually J.J. moved back in with the family.

The second occasion took place after the family moved to another home in Blythe. During the second incident, J.J. and Father were in the living room. J.J. and Father were lying on a couch together; Father was lying behind J.J. Father touched J.J.'s vagina under her pants, but over her underwear. Months, but not years, elapsed between the two incidents. J.J. did not tell Mother about the second incident. Approximately two years after the touching, J.J. was interviewed by police about the sexual abuse allegations.

Father also testified at the hearing. Father denied ever inappropriately touching J.J. and J.B. Father said he lived with J.J. for only two weeks per year during a three-year period because he was in prison the remainder of the time. Father said he was never questioned by police about abusing the Girls, never arrested for abusing the Girls, and never prosecuted for abusing the Girls.

Mother testified at the hearing as well. Mother stated Father was living with the family in Blythe more than two weeks per year. The Girls both told Mother about Father sexually abusing them. The Girls never indicated to Mother that they were lying about the abuse. Mother explained she moved away during the investigation because Father continually violated the court's protective order. Mother was unsure what happened to the abuse investigation after she moved away.

After the witnesses' testimony, the juvenile court stated it found untrue the allegation that J.J. and J.B. were sexually abused by Father, thus placing K.E., A.H., S.H., L.H. 1, and L.H.2 at risk for the same or similar abuse. (§ 300, subd. (j).) The court explained it did not believe the Girls were sexually abused by Father. The juvenile court found it problematic that (1) the Girls were not taken to report the abuse to law enforcement until two years after the incident took place, and (2) the abuse reports were just allegations from nine years in the past without any corroborating evidence. The trial court explained, "There is nothing in writing. There was no action by law enforcement; no action by Riverside Child and Family Services."

The trial court asked the Department if the Sheriff's Department's report was included in the evidence. The Department said the report was not included. The court said the details in the Department's report were "lacking." Minor's counsel responded, "I don't know what details the Court needs because all the Code requires is that there is skin-to-skin contact." The court explained, "But it is a very serious allegation against him; I would expect more than a he said; she said."

Minor's counsel argued it was problematic to not have true findings on the sexual abuse allegations because the children would be visiting Father and he would not be receiving services for being a sexual predator, which would place the kids at risk. The juvenile court asked Father if he would voluntarily participate in sexual predator counseling upon his release from incarceration. Father agreed to do "[a]nything in the best interest of [his] children."

8

The Department told the juvenile court it was unsure what corroborating evidence it would need, since J.J. testified in court. The court responded, "I have evaluated the credibility and age of the complaint. The complete absence of corroboration—I'm not going to find it true by a preponderance of the evidence. I'm not. Sorry. Sometimes you win; sometimes you lose."

Minor's counsel told the court, "It is not about winning or losing. This is about protecting the kids." The court responded, "You can take it up on appeal. Ask the appellate court to change my ruling. There was nothing to it. And the fact that the girls were taken to the police station over two years later, and there is no physical evidence of abuse. There was no real fresh complaint, not even by [the family friend]. There is no evidence it happened at all."

Minor's counsel explained that there could not be more evidence than what was already provided. The juvenile court said, "There would be if they went to the police immediately. If they told their mother immediately, if [the family friend] did something about it immediately. You're asking me to do something now, which is ridiculous."

The Department moved to dismiss various allegations in K.E.'s petition, including the allegation that J.J. and J.B. were sexually abused by Father, thus placing K.E. at risk for suffering the same or similar abuse. (§ 300, subd. (j).) The court dismissed the allegation. In regard to A.H., L.H.1, L.H.2, and S.H., the court dismissed the allegation that J.J. and J.B. were sexually abused by Father, thus placing the four children at risk of suffering the same or similar abuse. (§ 300, subd. (j).)

9

In regard to J.B. and J.J., the court dismissed the allegations they were victims of sexual abuse, and Mother failed to protect them from the abuse. (§ 300, subd. (d).) The Department and Mother objected to the court dismissing the allegations. The court found Minors came within section 300, pursuant to other allegations in the petitions.

The juvenile court modified the proposed case plan to require Father to participate in sexual abuse counseling. The court further ordered Father not have contact with J.J., J.B., and K.H. K.H. was included in the no contact order due to "some recent disclosures." J.J. was placed in her father's custody. K.H. was placed in her father's custody. K.E. was placed in her father's custody. J.B. remained at the home of a non-related extended family member. S.H., L.H.1, L.H.2, and A.H. were placed in foster care.

## DISCUSSION

### A.     STANDING

Father asserts Minors and the Department do not have standing to argue on appeal that the juvenile court erred by dismissing the sexual abuse allegations because they are not aggrieved by the ruling. Father reasons Minors and the Department are not aggrieved because Minors were adjudged wards and removed from Mother's and Father's care based upon other findings, such as Mother's failure to protect the children from her mental illness. (§ 300, subd. (b).) Father believes Minors and the Department were not injured by the juvenile court's ruling, and therefore they lack standing to appeal. We disagree.

10

An aggrieved party has standing to bring an appeal. (Code Civ. Proc., § 902.) "'One is considered[] "aggrieved" whose rights or interests are injuriously affected by the judgment. [Citations.] Appellant's interest "'must be immediate, pecuniary, and substantial and not nominal or a remote consequence of the judgment.'" [Citation.]' [Citation.] '"[A] party must be 'beneficially interested' [citation], i.e., have 'some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large.' [Citation.] . . . 'The purpose of a standing requirement is to ensure that the courts will decide only actual controversies between parties with a sufficient interest in the subject matter of the dispute to press their case with vigor. [Citations.]' [Citations.]" (*In re Jasmine S.* (2007) 153 Cal.App.4th 835, 842.)

Section 361.5, subdivision (b)(3), provides that if a child or sibling has previously been adjudicated a dependent of the court due to sexual abuse, is returned to the parent, and then removed again due to further sexual abuse, then reunification services do not need to be provided to the parent. Thus, Minors and the Department have an interest in ensuring the juvenile court did not err in dismissing the sexual abuse allegations, because the sexual abuse allegations, if found true, will immediately trigger a protective statute that allows only one more incident of sexual abuse before ceasing reunification services. Given this law, we conclude Minors and the Department are aggrieved parties and have standing to appeal because if the allegations should have been found true, then Minors would benefit from the triggering of section 361.5, subdivision (b)(3).

11

B.      DISMISSED ALLEGATIONS

1.      *CONTENTION*

Minors contend the juvenile court erred by dismissing the sexual abuse allegations, because the allegations were supported by substantial evidence. The Department supports this contention.

2.      *STANDARD OF REVIEW*

Minors assert we should review the dismissal ruling under the substantial evidence standard of review. Mother asserts Minors are incorrect about the standard of review, because the juvenile court found the Department did not meet its evidentiary burden. Mother asserts the issue on appeal should be whether the Department's evidence compels a true finding on the sexual abuse allegations as a matter of law. We conclude the parties are advocating for the same standard of review.

Typically, the substantial evidence test is the appropriate standard of review for jurisdictional findings. (*In re J.N.* (2010) 181 Cal.App.4th 1010, 1022.) Under the substantial evidence standard we view "the evidence in the light most favorable to the prevailing party, giving the prevailing party the benefit of every reasonable inference and resolving all conflicts in support of the order.' [Citation.]" (*In re D.M.* (2012) 205 Cal.App.4th 283, 291.)

In *In re I.W.*, the appellate court reasoned it was not proper to apply the substantial evidence standard when the party carrying the burden of proof failed to meet its burden, because the standard would allow for attacking the evidence of the party who did not have a burden of proof. (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528.) Thus,

12

the appellate court in *In re I.W.* held: "where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' [Citation.]" (*Id*. at p. 1528.)

These standards of review are the same: if there is reasonable and credible evidence supporting the juvenile court's ruling, then the ruling must be upheld. In other words, if there is evidence reflecting the molestation did not occur then (1) there is substantial evidence supporting the ruling, and (2) minors' evidence is necessarily contradicted—the standards advanced by both parties are met. Accordingly, Minors and Mother are advocating for the same standard of review, which presents the following question for appeal: Is there substantial evidence supporting the juvenile court's non-finding, i.e., that the molestation did not occur?[2]

---

[2] While the substantial evidence standard typically poses the question, "Is there substantial evidence to support the finding sexual abuse occurred," in this case we are presented the opposite question—"Is there substantial evidence to support the finding sexual abuse did *not* occur?" This is not a de novo review and we are not the trier of fact. We may have reached a different finding if we were sitting as the juvenile court in this case, but that is not the issue. Under the substantial evidence standard, we can only determine whether there is evidence to support the juvenile court's finding that the molestation did not occur. (See *People v. Millwee* (1998) 18 Cal.4th 96, 132 [if the evidence is open to two reasonable interpretations, then the appellate court cannot substitute its conclusions for that of the trier of fact].)

13

3. *ANALYSIS*

(a)   <u>Section 300, subdivision (d)</u>

The abuse allegation concerning J.J. and J.B. provided that the Girls had been sexually abused by Father, and Mother failed to protect them from the abuse. (§ 300, subd. (d).)

Father testified he never inappropriately touched J.J. or J.B. Father also stated that he was never questioned, arrested, or prosecuted in connection with the Girls' molestation allegations. Given this evidence, it is contradicted that the molestation took place, because Father denies the allegations against him. As a result, the evidence does not compel a finding that the molestation occurred.

Further, as to whether Mother failed to protect the children, there is evidence that Mother moved J.J. out of the house—away from Father—after J.J. told Mother about the first molestation incident; J.J. did not tell Mother about the second incident. When Father repeatedly violated a protective order by coming to Mother's house, Mother "fled" the home—moving the family to a new location. Thus, there is evidence contradicting a finding that Mother failed to protect the children from Father, because Mother placed the children outside of Father's reach when he appeared to be a threat to them. Therefore, the evidence does not compel a finding that Mother failed to protect the children.

As a result, the juvenile court did not err by dismissing the sexual abuse allegations pertaining to J.J. and J.B. because the evidence does not compel a finding in

favor of the Department's sexual abuse allegations. In other words, there was evidence supporting a finding that the sexual abuse allegations lacked merit.

It is important to note that if any one of the three justices comprising this panel had been presiding over this matter at the juvenile court, then the result would likely have been different, in that any one of us would have found merit in the allegations; however, we are bound by the standard of review on appeal, and must conclude there is evidence supporting the juvenile court's finding.[3]

Minors present all the evidence supporting a finding that J.J. and J.B. were molested by Father. Minors conclude the evidence reflects "[t]here was sufficient evidence to find that J.J. and J.B. were sexually abused by [Father] and Mother failed to protect them under section 300, subdivision (d)." Minors' argument is not persuasive because they are not looking at the evidence in the light most favorable to the ruling. Rather, Minors are presenting the evidence in the light most favorable to the

---

[3] While the record supports an affirmance of the juvenile court's ruling, our holding is not meant to affirm the juvenile court's approach to this case. The juvenile court's comments that the sexual abuse allegations were merely "he said, she said" and "ridiculous" are troublesome to this court. Many cases involve one witness's testimony contradicting another witness's testimony. A victim's testimony often lacks corroborating evidence in sexual assault cases. A lack of corroborating evidence does not necessarily mean an assault did not occur. (See *People v. Gammage* (1992) 2 Cal.4th 693, 700 [the testimony of a complaining witness in a sexual assault case does not need corroboration].) It is the juvenile court's job to weigh the sufficiency of the evidence and the credibility of the witnesses, not merely count the number of witnesses. (See *People v. Anderson* (2007) 152 Cal.App.4th 919, 940 ["[T]he number of witnesses who have given testimony on a particular point is not the test for the truth of that point"].) Reducing a matter as serious as a sexual assault allegation to "he said, she said" and dismissing it on that basis is problematic. We would hope that in the future the juvenile court will provide a more thoughtful explanation of its reasoning.

Department, when it was the Department's allegations that were dismissed. Since Minors are not discussing the evidence in the light most favorable to the ruling, we find Minors' argument to be unpersuasive.

(b) Section 300, subdivision (j)

The abuse allegations involving K.E., A.H., S.H., L.H.1, L.H.2 provided J.J. and J.B. were sexually abused by Father, thus placing K.E., A.H., S.H., L.H. 1, and L.H.2 at substantial risk for the same or similar abuse. (§ 300, subd. (j).) As explained *ante*, the evidence does not compel a finding that the abuse occurred, because Father denied touching the Girls in an inappropriate manner. Given this contradiction in the evidence, we must conclude the juvenile court did not err, because the record provides support for the juvenile court's finding that the Girls did not suffer sexual abuse.

Minors assert the section 300, subdivision (j) allegation could remain despite the failure of the section 300, subdivision (d) allegation because "[t]his Court could infer that the juvenile court believed that [Father] had sexually abused J.J. and J.B. and somehow found [the other] children to be at risk by [Father], because the court ordered sexual abuse counseling."

This court is reviewing the record for substantial evidence. A possible implication in the juvenile court's ruling is not evidence. Thus, this court cannot consider the ruling as evidence when reviewing the record. Moreover, the juvenile court expressly found untrue the allegation that Father molested J.J. and J.B., thus making it unnecessary for this court to resort to inferences. In sum, we find Minors' argument to be unpersuasive.

16

C.    REQUEST FOR JUDICIAL NOTICE

On November 21, 2012, the Department filed a motion to augment the record on appeal.  The Department sought to augment the record with documents pertaining to the 2007 molestation investigation involving Father, J.J., J.B., and K.H.  Mother opposed augmenting the record.  On December 28, 2012, this court ordered the motion to augment be deemed a request for judicial notice and reserved ruling on the request in order to consider it with the appeal.

We deny the Department's request.  Even if this court were in the habit of considering new evidence on appeal, which it is not, there would be no reason to grant this request.  (See *In re Zeth S.* (2003) 31 Cal.4th 396, 413 [normal rules precluding consideration of new evidence on appeal apply equally in juvenile dependency cases].)  As set forth *ante*, we must view the evidence in the light most favorable to the ruling, which means determining whether there is any credible evidence that contradicts the Department's evidence.

The record contains Father's testimony reflecting that he never molested J.J. and J.B., as well as Mother testimony reflecting that she removed the children from Father's physical custody when he posed a threat to them.  No matter what other evidence is presented, the record will contain this testimony compelling a conclusion that the juvenile court's ruling is supported by the record.  Minors do not argue Father's claim of innocence is impossible or inherently improbable.  (*People v. Fierro* (2010) 180 Cal.App.4th 1342, 1347 [A single witness's testimony can constitute substantial evidence unless the testimony is physically impossible or inherently improbable].)

17

Accordingly, there would be no purpose to granting the Department's request. As a result, the request is denied.

### D. FURTHER DISCOVERY

In Minors' Appellants' Reply Brief they argue this court should reverse the juvenile court's untrue findings pertaining the sexual abuse allegations, or, alternatively, remand the matter for further discovery and another hearing on the sexual abuse allegations. Minors argue the evidence presented in the Department's motion to augment the record—reports pertaining to the 2007 molestation investigation— "solidifies" the Department's and Minors' allegations concerning sexual abuse.

We cannot grant the request for further discovery or a hearing because the juvenile court did not err. There would be no purpose to the hearing or the discovery because the jurisdictional findings have already been rendered. (See *In re Jessica C.* (2001) 93 Cal.App.4th 1027, 1040 [collateral estoppel applies in jurisdictional hearings, unless the child makes disclosures about the alleged molestation that were not made prior to the initial dependency petition].) Accordingly, we deny the alternative request for further discovery and another hearing.

### E. DEPARTMENT'S CONTENTIONS

In the Department's Respondent's Brief, it argues the juvenile court should have continued the jurisdiction hearing in order to permit the Department to produce evidence supporting the sexual abuse allegations. The Department asserts the juvenile court should have sua sponte continued the matter, since it was the juvenile court raising questions about the Department's evidence. Also in its Respondent's Brief, the

18

Department contends the juvenile court erred because it "misapplied the law[,] misread the facts, and was given incorrect information."

These issues are not properly before us. It is the job of the Minors, as the appellants, to frame the issues on appeal. The Department, as a respondent, cannot raise new issues. (*Kardly v. State Farm Mut. Auto Ins. Co.* (1995) 31 Cal.App.4th 1746, 1749, fn. 1 ["A respondent who fails to file a cross-appeal cannot urge error on appeal"]; see also Cal. Rules of Court, rule 8.216(b) [discussing briefs for party that is a respondent and cross-appellant].)

Additionally, the timing is problematic from a due process perspective because Mother, Father, and the Department are all respondents. Mother and Father may not have had time to consider the independent arguments for reversal raised in the Department's brief and respond to those arguments, since they are all respondents and were presumably working on their briefs at the same time. (See *Provost v. Regents of University of California* (2011) 201 Cal.App.4th 1289, 1292 [respondents need to have an opportunity to respond to arguments for reversal and issues cannot be raised that are beyond the scope of the appellants' opening brief].) Thus, we do not address these independent arguments raised by the Department, because the Department is a respondent and did not file a cross-appeal. (*Kardly v. State Farm Mut. Auto Ins. Co.*, *supra*, 31 Cal.App.4th at p. 1749, fn. 1 ["A respondent who fails to file a cross-appeal cannot urge error on appeal"].)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____

J.

We concur:

KING _____

Acting P. J.

CODRINGTON _____

J.